**UNITED STATES of America, Plaintiff,**

v.

**James R. CROCKER, Defendant.**

**Crim. A. No. 90–42–JRR.**

United States District Court,
D. Delaware.

Jan. 2, 1991.

William C. Carpenter, Jr., U.S. Atty., and Richard G. Andrews, First Asst. U.S. Atty., U.S. Dept. of Justice, Wilmington, Del., for plaintiff.

Richard F. Thurston, Denver, Colo., for defendant.

## OPINION

ROTH, District Judge.

James Robert Crocker ("Crocker") was indicted on May 22, 1990 on four counts of tax evasion in violation of 26 U.S.C. § 7201 (1988) and four counts of failure to file a tax return in violation of 26 U.S.C. § 7203 (1988). This Court conducted a jury trial on December 17 and 18, 1990, and the jury returned verdicts of guilty on each of the eight counts. At the close of the government's case and again at the close of all the evidence, Crocker's counsel moved for a judgment of acquittal. Having taken that motion under advisement during trial, the motion for judgment of acquittal is presently before us. For the reasons that follow, the motion will be denied.

## I. FACTS

At trial, the government presented the testimony of several employees of the Internal Revenue Service and a Deputy U.S. Marshal, as well as IRS documents and several stipulations regarding various financial records. In brief outline, the evidence introduced by the government in presenting its case at trial demonstrated the following facts: For the tax years 1984 through 1987 inclusive, Crocker did not file any tax returns or pay any taxes by the applicable April 15th due dates for each tax year. Crocker finally filed tax returns for these tax years only on January 6, 1989, after he had been informed that he was under criminal investigation by the IRS. As of the date of trial, however, he still had not paid any taxes for those years.

The government's evidence further showed that Crocker avoided paying taxes by claiming on the W–4 and W–4A forms he filed with his employer, American Technical Services, Inc., that he was exempt from withholding. American Technical Services, Inc. employed Crocker from January, 1984 through 1987. Crocker filed exempt W–4 forms in 1984 and 1985 and an exempt W–4A form in 1987. However, the 1985 form was not properly completed, and the form he completed in 1987 stated it would take effect in 1988. The IRS assessed fines against Crocker for falsely claiming on these W–4 and W–4A forms that he was exempt from withholding, and ultimately collected these fines only by placing a levy on Crocker's wages.

In addition, on each of the W–4 and W–4A forms Crocker filed with his employer, he listed as his address a post office box in Jackson, Alabama. Although Crocker's father has periodically checked that post office box, the evidence indicated that Crocker did not live in Alabama during the 1984 to 1987 time period. Rather, stipulations introduced by the government showed that the Navy Federal Credit Union listed a New Jersey address for Crocker starting in February, 1984, and that from March, 1985 until October, 1988 Crocker and his wife owned and lived in a house at 3 Holly Drive, New Castle, Delaware.

Due to Crocker's listing of an Alabama address, when the IRS's investigation of Crocker began in 1986, it was conducted from the IRS's Alabama office. Crocker's case was transferred to the IRS's Delaware office in 1987, after his actual address was discovered. Revenue Officer Bexley, the Alabama officer initially assigned to the case, testified that when she contacted Crocker, he evaded her attempts to discover his true address, employment status, and financial situation. She testified that Crocker told her that he did not work and did not own either a home or any cars. As already noted, however, the government's evidence demonstrated that in 1986 Crocker was employed by American Technical Services, Inc. and owned a home in Delaware. It also showed that during the 1984 to 1987 time period, Crocker purchased two new automobiles and several thousand dollars worth of rare coins.

The defense case consisted of the testimony of two character witnesses and Crocker himself. The defense also introduced as exhibits copies of the IRS tax forms and instruction booklets for the relevant tax years. Crocker's character witnesses testified to his honesty and good character. In brief summary, Crocker himself testified as follows: He stated that he had filed tax returns until 1979, but then filed no returns until his late filing of his 1984 through 1987 returns in January, 1989. He testified that after filing in 1979, he began studying the Internal Revenue Code and concluded that the United States' system of taxation is voluntary, and that he was not required to pay taxes. Crocker explained his beliefs in some detail. He also described various tax deductible expenses he had incurred, including substantial medical expenses for his handicapped daughter. In addition, he testified that the value of the rare coins he had purchased was $22,000.

Crocker further explained the history of his filing exempt W–4 and W–4A forms. He stated that he filed his first exempt W–4 form in 1983, and filed further exempt W–4 forms in 1984 and 1985. In 1986 his employer did not ask him to complete a

new W-4 form and he did not fill one out. He testified that in 1987 he was asked to complete a new form for his company's files for 1988, since the form had been changed and new tax laws would take effect in 1988. Crocker complied with his employer's request, and when completing the new W-4A form, he stated he was exempt from withholding and indicated the form would take effect in 1988. Crocker also testified that it was "more than likely" that he would have filled out an exempt W-4 form in 1986 had his employer asked him to complete a new form in that year.

## II. STANDARD FOR A MOTION FOR JUDGMENT OF ACQUITTAL

██ Under Fed.R.Crim.P. 29(a), the court may grant a motion for judgment of acquittal "after the evidence on either side is closed if the evidence is insufficient to sustain a conviction." In considering the motion, we must not weigh the evidence, but must determine whether the government has proffered sufficient evidence on each element of the charged offenses. *United States v. Giampa*, 758 F.2d 928, 934 (3d Cir.1985). We are also required to view the evidence in the light most favorable to the government, and to draw all reasonable inferences in the prosecution's favor. *United States v. Ashfield*, 735 F.2d 101, 106 (3d Cir.), *cert. denied sub nom. Storm v. United States*, 469 U.S. 858, 105 S.Ct. 189, 83 L.Ed.2d 122 (1984). We may grant the motion only if we conclude that "no rational jury could conclude beyond a reasonable doubt that the defendant[ ] willfully attempted to evade [his] tax obligations." *Id.*

## III. THE MERITS OF CROCKER'S MOTION FOR JUDGMENT OF ACQUITTAL

Crocker's counsel raised three grounds in his motion for judgment of acquittal: (1) insufficiency of the evidence, (2) expiration of the statute of limitations, and (3) violation of the Paperwork Reduction Act. We shall treat each of these issues in turn.

### A. *Insufficiency of the Evidence*

██ The elements the government must prove to establish guilt of tax evasion under 26 U.S.C. § 7201 (1988) are (1) an affirmative act to evade or defeat payment of a tax, (2) the existence of a tax deficiency, and (3) willfulness. *Sansone v. United States*, 380 U.S. 343, 351, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882 (1965); *Ashfield*, 735 F.2d at 105. The elements of failure to file a tax return under 26 U.S.C. § 7203 (1988) are (1) the defendant was required to file a return, (2) the defendant failed to file a return, and (3) willfulness. *See Sansone*, 380 U.S. at 351, 85 S.Ct. at 1010; *United States v. Edelson*, 604 F.2d 232, 235 n. 2 (3d Cir.1979).

██ Defense counsel contends that the government's evidence was insufficient on the affirmative act element of tax evasion and on the willfulness element of both offenses. The affirmative act element of tax evasion may be met by evidence of "the affirmative act of filing a fraudulent W-4" in which an employee falsely claims to be exempt from withholding. *See United States v. Connor*, 898 F.2d 942, 944–45 (3d Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 3284, 111 L.Ed.2d 793 (1990). The element of willfulness is defined as the "voluntary, intentional violation of a known legal duty." *United States v. Pomponio*, 429 U.S. 10, 12, 97 S.Ct. 22, 23, 50 L.Ed.2d 12 (1976); *Ashfield*, 735 F.2d at 105.

As to the affirmative act requirement, defense counsel argues that the government has only established this element for the 1984 tax year, because this was the only year in which Crocker properly completed a W-4 form asserting that he was exempt from withholding. Crocker's 1985 form was filled out incorrectly; in the box at the end of line 6b Crocker only wrote "1985" and the form states "enter the year effective and 'EXEMPT' here." Furthermore, there is no evidence that Crocker filled out any W-4 form in 1986, and when Crocker completed a new W-4A form in 1987, he wrote in an effective year of 1988. On the willfulness element, Crocker's counsel contends that the evidence is simply insufficient.

Since the motion for judgment of acquittal was first made at the close of the government's case and renewed at the close of all the evidence, we must separately evaluate the sufficiency of the evidence presented at each point in the trial.

### 1. At the Close of the Government's Case

The government's evidence on the affirmative act element of tax evasion included copies of Crocker's 1984 W–4, 1985 W–4, and 1987 W–4A, in each of which he falsely claimed to be exempt from withholding. We find that viewing this evidence in the light most favorable to the prosecution, the government introduced sufficient evidence on the affirmative act element to withstand a motion for judgment of acquittal.

For the 1984 tax year, as defense counsel agrees, the 1984 exempt W–4 is sufficient. We also find that Crocker's exempt W–4 for the 1985 tax year is sufficient evidence of an affirmative act of tax evasion in that year. Although Crocker failed to write the word "exempt" in the box at the end of line 6b, he did write the effective year of 1985 in that box, and he checked the relevant boxes in lines 6a, 6b, and 6c as necessary to claim an exempt status. Moreover, Crocker completed line 6c which states it should only be answered if the employee entered the word "exempt" on line 6b. Thus, the single defect on the form is not enough to prevent a rational jury from finding the affirmative act element has been established beyond a reasonable doubt for 1985.

As for the 1986 and 1987 tax years, the evidence indicates that Crocker maintained his falsely claimed exempt status through the continuing effects of the 1984 and 1985 W–4 forms. On a motion for judgment of acquittal we must draw all reasonable inferences in the prosecution's favor, *United States v. Ashfield*, 735 F.2d 101, 106 (3d Cir.), *cert. denied sub nom. Storm v. United States*, 469 U.S. 858, 105 S.Ct. 189, 83 L.Ed.2d 122 (1984), and a reasonable inference may be drawn that Crocker deliberately perpetuated this system in which his exempt W–4 forms already on file ensured that his employer would continue not to withhold any taxes for him. In addition, in 1987 Crocker completed a W–4A form, in which he again claimed he was exempt from withholding. It is reasonable to infer that Crocker's employer would have declined to continue his claimed exempt status in 1987 had he refused to complete a new W–4A form or had he ceased to claim he was exempt when filling it out. Thus, even though Crocker wrote in "1988" as the effective date for the W–4A form, completing this form may constitute an affirmative act to avoid any withholding of taxes during the 1987 tax year.

The government also introduced substantial evidence on the willfulness element, which is necessary to prove both the offense of failure to file a return and that of tax evasion. First, the government's evidence demonstrated that on his W–4 and W–4A forms, Crocker listed an Alabama address even after he had moved to New Jersey in early 1984 and then bought a home in and moved to Delaware in 1985. This fact permits a reasonable inference that Crocker was seeking to avoid detection by the IRS. Furthermore, the government introduced evidence that when Alabama Revenue Officer Bexley began the IRS investigation of Crocker in 1986 and 1987, Crocker not only evaded her questions but also lied to her about his employment status, residence, and financial situation. In addition, Crocker invested his money where the IRS could not reach it: in several thousand dollars worth of rare coins. Therefore, we find that, like the affirmative act evidence, this evidence of willfulness is also sufficient to survive a motion for judgment of acquittal.

### 2. At the Close of All the Evidence

The government's evidence on the affirmative act and willfulness elements was further reinforced by evidence introduced during the defense case. As to the affirmative act requirement, Crocker testified about his practice of filing exempt W–4 and W–4A forms. He stated that in 1987, his employer asked him to complete a new W–4A form for its files because of changes in the tax laws. Crocker testified that he then completed the form in compliance with his employer's request, stating on the form

that he was exempt from withholding. Crocker also stated that had his employer asked him to fill out a new W–4 form in 1986, it is "more than likely" that he would have written on the form that he was exempt from withholding. We find this is further evidence that Crocker sought to take all steps necessary to avoid having taxes withheld from his paycheck. It is therefore further evidence of affirmative acts of tax evasion.

Similarly, Crocker's testimony provided additional evidence upon which a jury could find that his actions were willful. Crocker testified that until 1979 he had filed tax returns, thereby indicating that he was well aware of the requirement that he do so. Moreover, he testified that he actually read the Internal Revenue Code. Although Crocker stated that his readings convinced him he was not required to pay taxes, a jury could infer from the fact that he had read the code that Crocker knew of his legal obligations to pay taxes. Finally, Crocker testified that the value of the rare coins he had purchased was $22,000, thereby demonstrating the considerable extent of financial resources which he had placed beyond the reach of the IRS. This testimony constitutes further evidence that Crocker's acts were willful.

Thus, the evidence introduced during the defense case supplemented that of the government on both the affirmative act and willfulness elements. We conclude that the evidence was sufficient to sustain a conviction and survive a motion for judgment of acquittal.

### B. *Statute of Limitations*

■ The second ground asserted as a basis for a judgment of acquittal is that the prosecution of the four tax evasion counts is barred by the statute of limitations.[1] The relevant statute of limitations is 26 U.S.C. § 6531 (1988), which provides a six year time period for prosecuting tax evasion offenses. The argument is based on the fact that Crocker completed his 1984 W–4 form on January 16, 1984, but the

indictment against him in the present case was filed six years and four months later, on May 22, 1990. Defense counsel argues, citing *United States v. Ferris*, 807 F.2d 269 (1st Cir.1986), *cert. denied*, 480 U.S. 950, 107 S.Ct. 1613, 94 L.Ed.2d 798 (1987), that the six year period begins to run on the date of the last affirmative act of tax evasion. He asserts that this date is January 16, 1984, since as discussed above, he maintains that only the 1984 W–4 form constituted an affirmative act of tax evasion.

However, as defense counsel acknowledged when presenting his motion, *Ferris* itself states that "[i]f all that defendant had done was to fail to file his … income tax return, then the last act of evasion would have been April 15 [of the following year], the date the return and tax were due." 807 F.2d at 271. In the present case, the first tax year charged in the indictment is 1984, and thus the statutory period would have begun to run on April 15, 1985. Consequently, the May 22, 1990 indictment was filed well within the six year statutory period.

### C. *Paperwork Reduction Act*

■ The final ground asserted in the motion for judgment of acquittal is that this prosecution violates the Paperwork Reduction Act (PRA), 44 U.S.C. §§ 3501–3520 (1988). Under the PRA, any "information collection request" from a federal agency must display a current control number issued by the Office of Management and Budget (OMB). *Id.* at § 3507. If an agency's request does not display an OMB control number, "no person shall be subject to any penalty for failing to maintain or provide information" to the agency pursuant to the request. *Id.* at § 3512. The PRA defines an "information collection request" as "a written report form, application form, schedule, questionnaire, reporting or recordkeeping requirement, collection of information requirement, or other similar method calling for the collection of information." *Id.* at § 3502(11).

---

1. Defense counsel did not state this ground was limited to the four tax evasion counts when he presented his motion, but the logic of the argument indicates that it only covers these counts.

Defense counsel concedes that the actual tax return forms that Crocker failed to file, the IRS's 1040 forms for 1984 through 1987, did display OMB control numbers as required by the PRA. He argues, however, that since the instruction booklets for the 1040 forms did not also display OMB control numbers,[2] Section 3512 of the PRA prohibits the government from subjecting Crocker to "any penalty" for his failure to file tax returns. In support of his argument, defense counsel cites *United States v. Smith*, 866 F.2d 1092 (9th Cir.1989). *Smith* involved an appeal from a conviction for conducting mining activities without filing for or obtaining a permit from the U.S. Forest Service. The Ninth Circuit reversed the conviction, because it found that the Forest Service's filing requirement regulations lacked an OMB control number and therefore violated the PRA.

After reviewing the caselaw on this issue, we have concluded that while the PRA does mandate that IRS 1040 forms display OMB control numbers, this requirement does not extend to the accompanying instruction booklets, because they do not themselves constitute "information collection requests." The first courts to confront the issue of whether the PRA prohibits penalizing individuals for failure to file IRS tax forms concluded that the PRA did not apply to the process of assessment and collection of taxes. *See, e.g., Cameron v. Internal Revenue Service*, 593 F.Supp. 1540, 1556 (N.D.Ind.1984), *aff'd*, 773 F.2d 126 (7th Cir.1985); *Snyder v. Internal Revenue Service*, 596 F.Supp. 240, 250 (N.D. Ind.1984). These cases held that IRS forms are exempt from the PRA's requirements under 44 U.S.C. § 3518(c)(1)(B)(ii) (1988), which exempts "an administrative action or investigation involving an agency against specific individuals or entities."

*See Cameron*, 593 F.Supp at 1556. We do not agree that this exemption covers IRS 1040 forms, since not simply one specific individual but all income earners are required to complete tax returns. More importantly, in a recent case interpreting the PRA, the United States Supreme Court stated that under the Act, "[t]ypical information collection requests include tax forms ..." *Dole v. United Steelworkers of America*, —— U.S. ——, 110 S.Ct. 929, 933, 108 L.Ed.2d 23 (1990).

In addition, following *Dole*, the U.S. Court of Appeals for the Tenth Circuit has held that the PRA applies to IRS tax returns. *See United States v. Collins*, 920 F.2d 619, 630 nn. 12–13 (10th Cir.1990). *Collins* involved a conviction for tax evasion on almost identical facts to those in the present case: the defendant had filed tax returns and paid his taxes until 1979; then he became convinced he was not required to do so; and subsequently he filed no tax returns, paid no taxes, and falsely claimed on his W–4 forms that he was exempt from withholding. The *Collins* court distinguished IRS summonses, which it found to be exempt from the PRA under the "administrative action against specific individuals" exclusion of 44 U.S.C. § 3518(c)(1)(B)(ii) (1988), but it held that the PRA does apply to tax returns. *Collins*, at 630 n. 12. Although *Collins* did not raise the question of the PRA's applicability to IRS instruction booklets, the *Collins* court found that the 1040 forms involved contained OMB control numbers, and held that they complied fully with the PRA.

We agree that the PRA covers IRS 1040 forms, and conclude that since the forms for the relevant tax years display OMB control numbers, they comply with the Act.[3] However, we reject defense coun-

---

2. Crocker's counsel introduced the 1040 forms and instruction booklets for the relevant tax years as defense exhibits at trial, and every one of the 1040 forms and not one of the instruction forms displays an OMB control number. For the 1984 tax year, the defense exhibit contains only the schedules and the instructions, but no actual form 1040. We note, however, that the schedules do contain OMB control numbers, and defense counsel conceded that the 1040

forms for all relevant tax years display OMB control numbers.

3. We choose not to rely on *United States v. Dawes*, No. 88–10002–01 (D.Kan. Oct. 15, 1990), 1990 WL 171074, cited by the government in response to the motion for judgment of acquittal. *Dawes* rejected a PRA challenge to a prosecution for tax evasion and failure to file tax returns, holding that the PRA does not apply to the assessment and collection of taxes. The

sel's argument that the accompanying instruction booklets must also comply with the PRA. The instruction booklets for the 1040 forms do not independently constitute "information collection requests" under 44 U.S.C. § 3502(11) (1988). That section defines such a request as "a written report form, application form, schedule, questionnaire, reporting or recordkeeping requirement, collection of information requirement, or other similar, method calling for the collection of information." Not only do instruction booklets fail to appear on this list, but they do not fit in the catchall category of a "method calling for the collection of information." Rather, the IRS requests all the information it seeks through the 1040 form itself, and the instructions do not ask that any additional information be supplied.

The Supreme Court recently addressed the meaning of "information collection request" under the PRA in *Dole v. United Steelworkers of America,* — U.S. —, 110 S.Ct. 929, 108 L.Ed.2d 23 (1990). The Court found that most items in the statutory definition are "forms for communicating information to the party requesting that information," and held that the "reporting and recordkeeping requirement" category is limited to "only rules requiring information to be sent or made available to a federal agency, [and] not disclosure rules." *Id.* 110 S.Ct. at 935. IRS instruction booklets are neither "forms for communicating information" to the IRS nor "rules requiring information to be sent." They are simply publications designed to assist taxpayers to complete tax forms and more easily comply with an "information collection request." [4]

In addition, classifying instruction booklets as "information collection requests" would not further any of the statutory purposes of the PRA set forth in 44 U.S.C.

§ 3501 (1988). For example, including form 1040 instruction booklets under the PRA would not "minimize the Federal paperwork burden for individuals" under Section 3501(1), since the tax forms themselves are already covered by the Act and individuals are already required to complete them. Moreover, OMB reviews under the PRA are limited to "determining whether the collection of information by an agency is necessary for the proper performance of the functions of the agency." *Id.* at § 3504(c)(2). Since OMB has previously determined that 1040 forms themselves are necessary for the IRS's functions and the instructions do not generate any additional information, no benefit would be gained from an OMB review of the instruction booklets. As the Supreme Court stated in *Dole,* if none of Congress' listed purposes for the PRA would be served by including an item under the Act's coverage, this is "strong evidence that Congress did not intend the Act to authorize OMB review" of the item. 110 S.Ct. at 936.

For these reasons, we conclude that the 1040 form instruction booklets are not themselves "information collection requests" that must display OMB control numbers. As a result, Section 3512 of the PRA does not provide grounds for granting the motion for judgment of acquittal.

## IV. CONCLUSION

Therefore, we find that none of the three grounds asserted warrants a judgment of acquittal. The motion for judgment of acquittal, having been considered both at the close of the government's case and at the close of all the evidence, will be denied.

---

*Dawes* court cited the Supreme Court's decision in *Dole v. United Steelworkers of America,* — U.S. —, 110 S.Ct. 929, 108 L.Ed.2d 23 (1990), but concluded that *Dole* did not require a different holding. However, the U.S. District Court for the District of Kansas is part of the Tenth Circuit, and one month after *Dawes,* the U.S. Court of Appeals for the Tenth Circuit determined in *United States v. Collins,* 920 F.2d 619,

(10th Cir.1990), that the PRA does apply to tax forms. Not only does *Collins* undercut the authority of *Dawes* as precedent, but we find the *Collins* analysis more persuasive.

**4.** If the taxpayer had to rely on the instruction booklet to create his or her own form 1040, we would come to a different conclusion.