UNITED STATES of America,
Plaintiff–Appellee,

v.

Jerry R. WILLIAMS,
Defendant–Appellant.

No. 90–5569.

United States Court of Appeals,
Fifth Circuit.

March 27, 1991.

---

**146**

Farley P. Katz, C.J. Muller, Matthews & Branscomb, San Antonio, Tex., for defendant-appellant.

Wayne F. Speck, LeRoy Morgan Jahn, Asst. U.S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before RUBIN, POLITZ, and DUHÉ, Circuit Judges.

POLITZ, Circuit Judge:

Convicted of three felony counts of attempting to evade federal income taxes, 26 U.S.C. § 7201, arising out of his failure to file returns for the years 1983, 1984, and 1985, Jerry R. Williams appeals, contending that the elements of the felony offense were not proven and that the charge in one count was untimely. Finding no error, we affirm.

### Background

While employed by the Great American Reserve Life Insurance Company (GARCO), from 1971 through late 1982 Williams maintained on file a W-4 form claiming one personal exemption. Taxes were deducted by his employer but Williams filed no federal income tax returns. In 1982 Williams was promoted and transferred to San Antonio. Anticipating more deductions from increased business expenses and the purchase of a home, in October 1982 he filed a new W-4 claiming 14 exemptions. On March 17, 1983, Williams again revised his W-4 filing, this time submitting a form claiming 50 exemptions. He explained the massive exemption increase in an accompanying note to GARCO's accounting office which read: "I'm going to have to increase my exemption to 50 for a few months. I've got to survive the tax bite until my o/w build up." The "o/w" referred to "overwrites," the payments Williams received based on insurance written by subordinate agents. The "survival period" was extensive. Because of the claimed exemptions, for nearly three years GARCO withheld only negligible amounts, considering Williams' earnings, ranging from just over $1,200 on compensation exceeding $61,000 to $5,455 on earnings exceeding $74,600.

In December 1986 Williams' tax-savings gambit came to an end. A revenue officer went to Williams' office and told him that the IRS had information that he had not filed income tax returns for the prior six years. Asked to confirm or deny, Williams lied, claiming that he had filed the requisite returns and offering to produce copies at a later meeting. Williams conceded, however, that he probably owed taxes beyond the amount paid. A second meeting was scheduled for the following month in the IRS office. During that meeting Williams admitted that he had lied earlier and acknowledged that he had not filed a tax return since 1971. Williams produced W-2 forms for the years 1979, 1980, 1983, 1984, and 1985.

Williams was indicted on December 6, 1989 for three felony counts of attempting to evade federal income tax by failing to file tax returns for the years 1983, 1984, and 1985, failing to pay the tax due, and submitting a false and fraudulent Form W-4 to his employer and maintaining it on file during the indictment period. Williams was convicted on all counts and was sentenced to two concurrent three-year periods of incarceration, an additional suspended three-year term, five years probation, and a fine of $10,000. As a condition of proba-

tion Williams must pay all taxes, interest, and penalties due. He timely appealed.

### Analysis

Williams first contends that his convictions on Counts Two and Three for attempting to evade taxes for tax years 1984 and 1985 should be reversed because the indictment failed to allege a necessary element of the crime charged. Relying heavily on his interpretation of *Spies v. United States*, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943), and this court's holding in *Clay v. United States*, 218 F.2d 483 (5th Cir. 1955), Williams argues that the government neither alleged nor proved any affirmative act for those tax years and therefore he could not properly have been convicted of a felonious attempt to evade tax.

■ Our analysis begins with the recognition that before one may be convicted of the felony offense charged there must be the requisite proof of a specific intent of the accused to defeat or evade the payment of the subject tax. *United States v. Nelson*, 791 F.2d 336 (5th Cir.1986). *Spies v. United States* is the Supreme Court's seminal case distinguishing between the misdemeanor of willful failure to file, 26 U.S.C. § 7203, and the felony of attempting to evade or defeat tax under section 7201. Both crimes are based on similar provisions in the Internal Revenue Code,[1] and both require willfulness, *Sansone v. United States*, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965), but, as Justice Jackson wrote in Spies:

The difference between the two offenses, it seems to us, is found in the affirmative action implied from the term "attempt," as used in the felony subsection. It is not necessary to involve this subject with the complexities of the common-law "attempt." The attempt made criminal by this statute does not consist of conduct that would culminate in a more serious crime but for some impossibility of completion or interruption or frustration. This is an independent crime, complete in its most serious form when the attempt is complete, and nothing is added to its criminality by success or consummation, as would be the case, say, of attempted murder. Although the attempt succeed in evading tax, there is no criminal offense of that kind, and the prosecution can be only for the attempt. We think that in employing the terminology of attempt to embrace the gravest of offenses against the revenues, Congress intended some willful commission in addition to the willful omissions that make up the list of misdemeanors. Willful but passive neglect of the statutory duty may constitute the lesser offense, but to combine with it a willful and positive attempt to evade tax in any manner or to defeat it by any means lifts the offense to the degree of felony.

317 U.S. at 498–99, 63 S.Ct. at 368, 87 L.Ed. at 423 (footnote omitted). The Court, noting congressional use of the term "in any manner," provided an illustrative, non-exhaustive list of incidents upon which an inference of affirmative willful attempt could be predicated, including keeping false or double books, false invoicing, destruction of records, concealment of assets, and "any conduct, the likely effect of which

---

1. **§ 7201  Attempt to evade or defeat tax.**
   Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties imposed by law, be guilty of a felony and upon conviction thereof, shall *be fined not more than* $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 5 years, or both, together with the costs of prosecution.

   **§ 7203  Willful failure to file return, supply information, or pay tax.**
   Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return, keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $25,000 ... or imprisoned not more than 1 year, or both, together with the costs of prosecution....

   For our purposes, the statutory language construed by Spies is identical to the version currently in force. *Nelson*, 791 F.2d at 337 n. 1.

would be to mislead or to conceal." *Id.* at 499, 63 S.Ct. at 368, 87 L.Ed. at 423.

■ The *Clay* case, which Williams vigorously insists is both squarely on point and completely supportive of his position, is, in fact, neither. Will Clay and three other men were convicted of willfully attempting to evade a tax imposed on persons engaged in the business of accepting wagers. The indictment alleged only "that appellants were engaged in the business of accepting wagers without having paid the occupational tax." We applied the *Spies* analysis and arrived at the inexorable conclusion that the convictions could not stand because no affirmative act had been alleged, only a willful failure to pay the tax. 218 F.2d at 486. Absent an allegation of an affirmative act to mislead or conceal, a felony tax evasion indictment is defective.

The convictions at bar are based on charges of more than the owing and mere failure to pay taxes. The counts of the indictment for the years 1984 and 1985 charge that Williams had a specific amount of income upon which a specific amount of tax was due, facts known to Williams, and that he willfully attempted to evade and defeat the tax by failing to make an income tax return by the required date, by failing to pay the tax due, and by "maintaining of record with his employer his claim on Form W–4 of 50 exemptions." Williams insists that the mere maintenance of the fraudulent W–4 is only an omission, not the commission of an act, and he is therefore accountable only for the misdemeanor offense of failure to file.[2] *See United States v. Masat,* 896 F.2d 88 (5th Cir.1990). We are not persuaded by this semantic legerdemain.

■ Williams concedes that the filing of the fraudulent W–4 form claiming 50 exemptions on March 17, 1983 was an affirmative act for that tax year. He maintains, however, that the government must prove either a new affirmative act in 1984 and 1985 or that he intended in March of 1983 that the fraudulent form would carry forward to later years. This argument blithely overlooks the continuing nature of the W–4 form he filed and his obligation to correct intentional misrepresentations of facts.

The W–4 form Williams completed in March 1983 contained the following instructions:[3]

Your Form W–4 remains in effect until you change it or, if you entered "EXEMPT" on line 6b above, until February 15 of next year.

\* \* \* \* \* \*

If the number of withholding allowances you are entitled to claim decreases to less than you are now claiming, you must file a new W–4 with your employer within 10 days.

\* \* \* \* \* \*

You may be fined $500 if you file, with no reasonable basis, a W–4 that results in less tax being withheld than is properly allowable. In addition, criminal penalties apply for willfully supplying false or fraudulent information or failing to supply information requiring an increase in withholding.

Your employer must send to IRS any W–4 claiming more than 14 withholding allowances or claiming exemption from withholding if the wages are expected to usually exceed $200 a week. The em-

**2.** The precise issue presented on this appeal appears to be *res nova* at the appellate level. Positions similar to that advanced by Williams have been rejected. *See United States v. Copeland,* 786 F.2d 768, 770 (7th Cir.1985) (false W–4 form was filed during first tax year charged and during the year after the second tax year charged: "Where a taxpayer has willfully failed to file a tax return in violation of § 7203, a prior, concomitant or subsequent false statement may elevate the § 7203 misdemeanor to the level of a § 7201 felony.") (citing *United States v. Goodyear,* 649 F.2d 226, 228 (4th Cir.

1981)); *United States v. Crocker,* 753 F.Supp. 1209 (D.Del.1991).

**3.** Form W–4 (Rev. 1–83) has a detachable portion with a withholding worksheet which the taxpayer is instructed to detach and keep for his records. The form which Williams signed, under penalty of perjury, still has the worksheet attached. The quotations above are from the information and instruction portion of that form, which was admitted as an exhibit at trial.

ployer is to complete boxes 7, 8, and 9 only on copies of the W–4 sent to IRS.[4]

By maintaining the false form on file Williams continued to perpetrate his initially-intended misrepresentations which were vitally relevant to the tax issue. There is no doubt that Williams knew the form contained false relevant data and that he intended such precisely to prevent the appropriate withholding of his taxes by his employer. Williams was under a continuing obligation to correct his intentional misrepresentations. He failed to do so. Maintaining on file the March 17, 1983 W–4 thus constituted an act "the likely effect of which was to mislead or conceal." *Cf. United States v. Copeland*, 786 F.2d 768 (7th Cir.1986); *United States v. Crocker*, 753 F.Supp. 1209 (D.Del.1991). The record thus reflects affirmative acts for tax years 1984 and 1985.

Williams next challenges his conviction on Count One, invoking the six-year statute of limitations which he claims should commence when he filed the fraudulent W–4 in March 1983. If Williams is correct the six-year period had elapsed before his indictment was handed up in December 1989. The government counters that the relevant date for limitations purposes is April 16, 1984, the date on which the 1983 return was due. Whether the period runs from the due date of the return, when the defendant has not filed a return, is an issue of first impression for this court.[5]

■ We conclude that the indictment was filed timely. Williams' offense is the willful failure to file a tax return [6] coupled with an affirmative act to conceal or mislead as to his tax liability. Both elements were proven. Whereas the filing of the fraudulent W–4 was the affirmative act needed to enhance the crime to felony status, the failure to file a return was an essential part of his attempt to evade or defeat his tax liability. We therefore agree with those courts and commentators who have held or suggested that the limitations period for a prosecution under section 7201 in which no tax return was filed begins to accrue the day the return is due. *E.g., United States v. Ferris*, 807 F.2d 269, 271 (1st Cir.1986) ("If all that defendant had done was to fail to file his 1977 income tax return, then the last act of evasion would have been April 15, 1978, the date the return and tax were due."), *cert. denied*, 480 U.S. 950, 107 S.Ct. 1613, 94 L.Ed.2d 798 (1987); *United States v. Crocker*, 753 F.Supp. 1209 (D.Del.1991); *United States v. Sloan*, 704 F.Supp. 880 (N.D.Ind.1989); *United States v. Sherman*, 426 F.Supp. 85 (S.D.N.Y.1976); 15 *Mertens Law of Federal Income Taxation* § 55A.21 (1988); Annotation, Start of Limitations Period (26 U.S.C.S. § 6531) Against Prosecution for Attempted Evasion of Taxes Under 26 U.S.C.S. § 7201, 85 A.L.R.Fed. 880, 883 (1987). We express no opinion relative to the effect of affirmative acts occurring subsequent to the filing date.[7]

---

**4.** From the record it is evident that GARCO did not submit the W–4 to the IRS. Whether it failed to do so because of Williams' representation that he was increasing his exemptions for only a short period of time is not before this court.

**5.** This issue is distinct from the commencement of the limitations period when a return has been filed, either before or after the deadline. A quarter-century ago we noted:

> In a thoroughly documented opinion which traces the full legislative history of I.R.C. sections 6513 and 6531, the Supreme Court, in a unanimous opinion written by Mr. Justice Fortas, and in effect overruling *Hull* [*v. United States*, 356 F.2d 919 (5th Cir.1966) ], held that where the return was filed *after* the due date, the Statute of Limitations did not begin to run until the *date of filing*. (That is the date when the alleged crime was committed.) The Court

said that when the return is filed *prior* to the due date, the statute begins to run on the due date. *United States v. Habig*, 390 U.S. 222, 88 S.Ct. 926, 19 L.Ed.2d 1055, decided March 5, 1968 (mandate issued April 1, 1968). The decision in *Habig* is now binding upon us and therefore appellant's argument that this action was instituted too late has no merit.

*Bursten v. United States*, 395 F.2d 976, 980 (5th Cir.1968) (emphasis original), *cert. denied*, 409 U.S. 843, 93 S.Ct. 44, 34 L.Ed.2d 83 (1972).

**6.** There is no question of Williams' willfulness or of his tax deficiency. He conceded as much to the jury; his counsel's opening statement suggested that the jury should convict him of failure to file his returns.

**7.** We do not consider whether Williams' subsequent false statements to the revenue agent constituted affirmative acts; no mention of such statements was contained in the indictment.

Williams' 1983 tax return was due to be filed on April 16, 1984. He was indicted on December 6, 1989, within the six-year period of limitations.

The convictions are AFFIRMED.