UNITED STATES of America,
Plaintiff–Appellee,

v.

Ronald A. KING, Defendant–Appellant.

No. 96–4086.

United States Court of Appeals,
Seventh Circuit.

Argued May 28, 1997.

Decided Oct. 2, 1997.

Judith A. Stewart, Office of the United States Attorney, Indianapolis, IN, Robert E. Lindsay, Alan Hechtkopf, Meghan Skelton (argued), Department of Justice, Tax Division, Appellate Section, Washington, DC, for Plaintiff–Appellee.

Robert C. Perry, Indianapolis, IN, Jeffrey A. Dickstein (argued), Tulsa, OK, for Defendant–Appellant.

Before BAUER, COFFEY, and RIPPLE, Circuit Judges.

BAUER, Circuit Judge.

Ronald A. King was convicted by a jury of attempting to evade the assessment of income taxes for the years 1989 through 1993, in violation of 26 U.S.C. § 7201. On appeal, King challenges the sufficiency of the evidence, as well as various rulings by the district court. Although King presents four separate issues for review, the resolution of each turns, in some way, on the question of whether filing and maintaining on file a Form W–4 which falsely claims exemption from withholding may serve as the basis for a § 7201 violation in future years. For the reasons stated below, we find that it may. We therefore affirm.

## BACKGROUND

From 1965 through the time of his trial, King was an employee of Delco Electronics Corporation, a division of General Motors. During the 1980's and 1990's, Delco paid King wages ranging from approximately $29,900 to $50,000 per year. King also earned interest income during this period.

In September 1983, King filed a Form W–4 in which he claimed to be exempt from the

requirement that taxes be withheld from his wages. Delco's practice was to honor a Form W–4 submitted by an employee until the Internal Revenue Service ("IRS") or the employee told the company to withhold differently, so Delco originally honored King's claimed exemption from withholding. However, in November 1983, the IRS informed Delco that the form was false and instructed Delco to begin withholding income tax from King's pay. A copy of the IRS letter was forwarded to King. Delco began withholding taxes from King's wages in November 1983, pursuant to the IRS's directive. King paid his 1983 taxes the following spring.

In February 1984, King again filed a Form W–4 in which he claimed to be exempt from withholding. Again, the IRS notified Delco that the W–4 was incorrect and directed Delco to withhold taxes as if King were single and claiming one exemption. Delco complied with the directive.

The next time King filed a Form W–4 was in March 1987. At that time, he renewed his claim of exemption from withholding and wrote "under duress" in place of his signature. Delco honored the form. This time, the IRS did not issue a directive to Delco, but instead, commenced a criminal investigation. King maintained the 1987 W–4 on record at Delco at least throughout 1993.

King did not file a tax return for any year after 1983. Delco, however, filed Forms W–2, which reported to the IRS the wages it paid to King. From these W–2s, as well as from records regarding King's interest income and state personal property taxes, the criminal investigation unit of the IRS was able to calculate King's tax liability for the tax years 1989 through 1993. The IRS determined that King owed $6,941 for 1989, $6,606 for 1990, $7,919 for 1991, $8,628 for 1992, and $5,897 for 1993.

On June 5, 1996, King was charged in a five-count superseding indictment with attempting to evade the assessment of income tax during the calendar years 1989 through 1993, in violation of 26 U.S.C. § 7201. By bill of particulars, the government alleged that King committed affirmative acts of evasion (an element of the offense) by filing with Delco three Forms W–4 which falsely claimed exemption from withholding. King

filed a motion to dismiss the superseding indictment on the ground that filing Forms W–4 falsely claiming exemption from withholding in 1983, 1984 and 1987 could not, as a matter of law, constitute affirmative acts of evasion for the years 1989 through 1993. The court denied the motion, and the case went to trial. King made motions of acquittal at the close of the government's case and again at the close of all the evidence, arguing that the government had failed to prove any affirmative act of evasion. The court denied the motions. On September 1, 1996, a jury found King guilty on all counts, and the court sentenced King to concurrent terms of twenty-one months' incarceration on each count.

On appeal, King argues that (1) the district court erroneously denied his motion to dismiss because the superseding indictment failed to allege affirmative acts of evasion for the years charged; (2) there was insufficient evidence that he committed an affirmative act of evasion; (3) the court erred in denying his requested motion in limine; and (4) the court failed to adequately instruct the jury by refusing to give two of his proposed jury instructions.

## ANALYSIS

### A. *Motion to Dismiss*

◼ Title 26 U.S.C. § 7201 provides that "[a]ny person who willfully attempts in any manner to evade or defeat any tax imposed ... or the payment thereof shall ... be guilty of a felony...." In order to obtain a conviction under § 7201, the government must prove three elements: (1) the existence of a tax deficiency; (2) willfulness; and (3) an affirmative act constituting an attempt to evade or defeat tax. *Sansone v. United States*, 380 U.S. 343, 351, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882 (1965); *United States v. Eaken*, 995 F.2d 740, 742 (7th Cir.1993). King raises issues relating only to the third element, the requirement that the defendant have committed an affirmative act of evasion.

◼ An affirmative act is some conduct, undertaken at least in part because of a tax evasion motive, "the likely effect of which would be to mislead or to conceal." *Spies v. United States*, 317 U.S. 492, 499, 63 S.Ct.

364, 368, 87 L.Ed. 418 (1943). Filing a false Form W–4 satisfies the affirmative act requirement. *Sansone*, 380 U.S. at 351–52, 85 S.Ct. at 1010; *United States v. Sloan*, 939 F.2d 499, 501 (7th Cir.1991), *cert. denied*, 502 U.S. 1060, 112 S.Ct. 940, 117 L.Ed.2d 110 (1992); *see also Spies*, 317 U.S. at 499, 63 S.Ct. at 368 (giving examples of conduct that could constitute an affirmative act of evasion, including filing a false document and any other positive conduct the likely effect of which would be to mislead or conceal tax liability). If the false filing is shown to be willful, the offense is complete with the filing. *United States v. McGill*, 964 F.2d 222, 230 (3d Cir.), *cert. denied*, 506 U.S. 1023, 113 S.Ct. 664, 121 L.Ed.2d 588 (1992).

In his motion to dismiss, King contended that his filings in 1983, 1984 and 1987 could not, as a matter of law, support tax evasion charges for the years covered by the superseding indictment because the last of those forms legally expired no later than February 15, 1988. Title 26 C.F.R. § 31.3402(f)(4)–2(c)(1) provides that a Form W–4 that claims total exemption from withholding expires, as a matter of law, on February 15 of the year after that in which it is filed.[1] Under this regulation, the Forms W–4 that King filed in 1983, 1984 and 1987 legally expired on February 15, 1984, 1985 and 1988, respectively, at which times, according to King, they became totally ineffective for any purpose and could not mislead anyone or conceal anything about his tax liability for any future year.

The district court, relying on *United States v. Williams*, 928 F.2d 145 (5th Cir.), *cert. denied*, 502 U.S. 811, 112 S.Ct. 58, 116 L.Ed.2d 34 (1991), denied King's motion to dismiss and explained:

As *Williams* makes clear, the law does not require a separate affirmative act for each separate year charged. As this court understands the requirements of *Spies*, the issue is whether the government can prove, for each felony charge of an attempt to evade taxation, an affirmative act that the defendant undertook willfully, with the intention of evading taxes. What matters are the defendant's intentions and expectations at the time he took the action in question, and evidence of later willful omissions, such as failures to file returns and to pay taxes due, is relevant. In the absence of more specific guidance identified by the parties, it appears to the court that the issue the jury may have to decide is this: Whether the earlier W–4 filings are so related, in terms of common purpose, time, and likely effects (as they appeared to the defendant at the time), to the defendant's later failures to file tax returns and pay taxes that one or more of the earlier W–4 filings can be considered part of an attempt to evade taxes for each specific tax year charged. Whether a particular false filing has "expired" pursuant to Treasury regulations does not control the answer to that question, but it might be relevant if there is evidence that the defendant knew the filing would expire soon. But such expiration does not defeat the charges in this case as a matter of law.

On appeal, King asserts two errors in reasoning by the district court: (1) that the court erroneously relied upon *Williams* for its conclusion that the expiration of a Form W–4 does not preclude prosecution for tax evasion and that a separate affirmative act of evasion is not required for each separate count of the indictment, and (2) that the court confused the requirement that there be an affirmative act of concealing, deceiving or defeating the ascertainment of a known tax liability with issues concerning King's state of mind. We review the district court's refusal to dismiss the superseding indictment *de novo*. *United States v. Lee*, 72 F.3d 55, 57 (7th Cir.1995).

■ We begin our analysis with *United States v. Williams*, in which the Fifth Circuit held that the filing of a fraudulent Form W–4 (that had not legally expired) could supply the affirmative act required for tax evasion charges in subsequent years. Williams was convicted of attempting to evade federal income tax for the tax years 1983, 1984 and 1985. In October 1982 and March 1983, respectively, Williams submitted to his employer a Form W–4 which claimed more with-

1. The instructions for the 1987 Form W–4 included the following: "Your exempt status will remain in effect until February 15 of the next year. If you still qualify for exempt status next year, complete and file a new form by that date." The instructions to the 1983 and 1984 W–4s contained similar notices.

holding allowances than he was entitled to claim. The instructions to the W–4 that Williams completed in March 1983 included the notice: "Your Form W–4 remains in effect until you change it or, if you entered 'EXEMPT' on line 6b above, until February 15 of next year." Williams maintained the March 1983 W–4 on file during the period charged in the indictment.

On appeal to the Fifth Circuit, Williams conceded that his 1983 filing constituted an affirmative act for that tax year, but argued that the government neither alleged nor proved subsequent affirmative acts for each of the tax years 1984 and 1985, nor had the government shown, alternatively, that in March of 1983 Williams intended the fraudulent form he filed at that time to carry forward to later years. The court was not persuaded by Williams' argument. Commenting that Williams "blithely overlook[ed] the continuing nature of the W–4 form he filed and his obligation to correct intentional misrepresentations of facts," the court concluded that "[m]aintaining on file the March 17, 1983 W–4 [ ] constituted an act 'the likely effect of which was to mislead or conceal,' " and, therefore, the record reflected an affirmative act of evasion for the tax years 1984 and 1985. *Williams*, 928 F.2d at 148–49.

King points out that the Fifth Circuit imputed to Williams knowledge, imparted by the instructions to the W–4, of his continuing duty to correct his false 1983 form. King argues that if we were to follow the reasoning of the Fifth Circuit, we should impute to him the same knowledge of the instructions—instructions which differentiate between claims of excessive withholding allowances and claims of total exemption and which specifically advise that a Form W–4 which claims total exemption from withholding expires on February 15 of the following year.

While we have not yet encountered such a situation, where the Form W–4 that serves as the basis for the affirmative act element of a § 7201 charge technically expired before the dates alleged in the indictment, we think *Williams*, as well as the tenets of our own common sense, provide appropriate guidance for resolving the issue presented. We agree with the district court that the expiration of the 1987 Form W–4 does not defeat the charges in this case as a matter of law. Delco's practice was (and perhaps still is) to honor an employee's W–4 until told to do otherwise by the employee or the IRS. If a defendant files a Form W–4 in which he falsely claims to be exempt from withholding, and he keeps the fraudulent form on file indefinitely, all the while believing that his employer will honor it until he files a new one, it is only logical that the fraudulent W–4 may supply the affirmative act for § 7201 charges in later years, regardless of the fact that it technically expired pursuant to Treasury regulations. Maintaining a Form W–4 on file with one's employer effectively represents that one is still entitled to the number of allowances or exempt status claimed. If the form is false, the form certainly has the capacity to deceive for as long as it is kept on file. In this case, the fact that Delco failed to compel King to file a new W–4 each year, as requested by the IRS, in no way mitigates King's § 7201 liability. To find otherwise would be to allow the negligence of an employer to accrue to the benefit of an employee who has contravened the law in the first place by filing a false and fraudulent Form W–4. It would be inappropriate for us to judicially sanction a tax loophole like that.[2]

King makes another technical argument that the affirmative acts alleged in the indictment must have been committed at or about the time the offense is alleged to have occurred. The indictment here, according to King, was insufficient because his 1987 Form W–4, on its face, made no representations about tax liability for the years 1989 through 1993[3] and no affirmative conduct occurred on

---

2. We also note that it is irrelevant for our purposes here that King wrote "under duress" where he was instructed to sign his name. *See United States v. Robinson*, 974 F.2d 575, 577–78 (5th Cir.1992) (noting that an unsigned tax form is sufficient evidence to support a conviction for tax evasion).

3. With respect to exemption from withholding, the 1987 Form W–4 allowed a taxpayer to claim the following:

> 6 I claim exemption from withholding because (see Step 2 above and check boxes below that apply):

the offense dates alleged in the indictment. This argument is unavailing. The indictment properly alleged that King's offenses occurred on the due dates of his returns for the prosecution years. A § 7201 offense is not complete until a tax deficiency exists, and a deficiency will not arise until the due date of a tax return. *See United States v. Payne,* 978 F.2d 1177, 1179 (10th Cir.1992), *cert. denied,* 508 U.S. 950, 113 S.Ct. 2441, 124 L.Ed.2d 659 (1993); *Williams,* 928 F.2d at 149. And, as we will discuss below, the act of filing and maintaining on file a false Form W–4 carries over to future years if the defendant files with the requisite intent to evade taxes.

Furthermore, the cases King cites in support of his argument, *United States v. Romano,* 938 F.2d 1569 (2d Cir.1991), and *United States v. McGill,* 964 F.2d 222 (3d Cir.), *cert. denied,* 506 U.S. 1023, 113 S.Ct. 664, 121 L.Ed.2d 588 (1992), are consistent with the principle that it is sufficient for an indictment charging attempted tax evasion to allege, as the date of the offense, the date on which the offense became complete. In *Romano,* the defendant was charged with attempting to evade or defeat payment of his 1983 taxes. The indictment alleged that the date of the offense was October 15, 1984. The affirmative acts alleged to have been committed by the defendant consisted of (1) attempting to take money to Canada on November 17, 1983 without reporting it, (2) giving evasive answers to customs officials that same day when the money was discovered, and (3) subsequently failing to file an income tax return. The Second Circuit initially stated that nothing in the record revealed that anything occurred on or about the offense date alleged in the indictment. However, the court later determined that a relevant event had, in fact, occurred on that date, by assuming that the defendant had been granted extentions of time until October 15, 1984 to file his 1983 return. Therefore, the defendant's failure to file "occurred" on October 15, 1984. In *McGill,* the indictment expressly limited the affirmative acts to those occur-

ring on or after the due dates of the defendant's tax returns. The indictment read: "Beginning on or about [date], and continuing to the present, ... [the defendant] did willfully attempt...." Thus, *McGill* turned on the specific wording of the indictment and does not mandate a general rule that affirmative acts must have occurred on the offense dates charged.

■ King's second complaint with the district court's reasoning, as far as we can tell, is that the court erroneously referred to his state of mind (specifically, his intent) in discussing whether an affirmative act capable of deceiving the government was alleged in the indictment. The government posits, in response, that filing a false Form W–4 constitutes an affirmative act with respect to future tax years when a taxpayer submits the form with intent to prevent assessment of taxes for all ensuing years. Therefore, according to the government, the court properly referred to King's state of mind when it denied his motion to dismiss the superseding indictment. The government has it right. The essence of a § 7201 violation is the *attempt* in any manner to evade the assessment or payment of a tax. *See Spies,* 317 U.S. at 498–99, 63 S.Ct. at 368; *United States v. Robinson,* 974 F.2d 575, 578 (5th Cir.1992). The defendant's intent is, of course, a key element of any attempt crime and is necessarily intertwined with the defendant's conduct. Thus, in assessing the sufficiency of an indictment that alleges affirmative acts of evasion, a defendant's bare conduct need not be disentangled from his state of mind in committing the conduct. As the Second Circuit has explained:

> Satisfaction of the willfulness requirement is closely connected with the affirmative act element. Evidence of affirmative acts may be used to show willfulness, and the defendant must commit the affirmative acts willfully to be convicted of tax evasion. In this case, if the affirmative act element is satisfied, there is no question that willfulness is also present, and if the evidence

---

a ☐ *Last year* I did not owe any Federal income tax and had a right to a full refund of **ALL** income tax withheld, **AND**

b ☐ *This year* I do not expect to owe any Federal income tax and expect to have a right

to a full refund of **ALL** income tax withheld. If both a and b apply, enter the year effective and "EXEMPT" here.

(emphasis added). King fraudulently checked both boxes a and b.

of an affirmative act is insufficient, then willfulness becomes moot. Thus, the critical question is the third element—whether [the defendant] engaged in affirmative acts with the specific intent to evade his tax obligation.

*Romano,* 938 F.2d at 1572 (internal citation omitted); *see also Spies,* 317 U.S. at 499, 63 S.Ct. at 368 ("If the tax-evasion motive plays any part in such conduct the offense may be made out...."); *Romano,* 938 F.2d at 1573 ("Without some intent to violate the law, we do not think it is correct to infer that merely carrying money to Canada can be used to fulfill the affirmative act requirement for the felony of tax evasion...."). In short, the submission of a false Form W–4 constitutes an affirmative act of tax evasion for later years where the taxpayer intended to escape withholding for those years. Whether King filed the false W–4s with that requisite intent goes to the sufficiency of the evidence, which we discuss below.

### B. *Sufficiency of the Evidence*

King next argues that there was insufficient evidence to support his conviction. Again, the elements of a § 7201 offense are the existence of a substantial tax deficiency, willfulness, and an affirmative act constituting an attempt to evade or defeat tax. *Sansone,* 380 U.S. at 351, 85 S.Ct. at 1010; *Eaken,* 995 F.2d at 742. King concedes that, in general, the filing of a false Form W–4 constitutes an affirmative act of tax evasion. He argues, however, that the Forms W–4 he filed cannot form the basis for a conviction for evasion because (1) they expired prior to the indictment years, and (2) they did not contain a statement which could be relevant to the IRS's ascertainment of his tax liability during the indictment years. He concludes, therefore, that the government did not establish the required affirmative act element. To succeed in his sufficiency of the evidence challenge, King must show that, upon viewing the evidence in the light most favorable to the government, no rational jury could have found beyond a reasonable doubt that he committed the affirmative act element of the crime of attempted tax evasion. *See Eaken,* 995 F.2d at 741 (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).

Our earlier discussion renders the first part of King's argument moot. The technical expiration of a false Form W–4 that is indefinitely maintained on file with a defendant's employer will not defeat a charge of tax evasion. *See supra* p. 991.

 As for the second part of King's argument, we also determined above that filing a false Form W–4 constitutes an affirmative act of evasion with respect to a future year where the taxpayer submits the form with intent to prevent the assessment of taxes for all ensuing tax years. *See supra* pp. 992–993. The general rule in the majority of criminal cases that intent may be inferred from circumstantial evidence is no different in tax evasion prosecutions. *United States v. Voigt,* 89 F.3d 1050, 1090 (3d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 623, 136 L.Ed.2d 546 (1996). Tax evasion cases "simply require that there be some evidence from which a jury could infer an intent to mislead or conceal beyond mere failure to pay assessed taxes; it is for the jury to determine, as a matter of fact, whether the affirmative act was undertaken, in part, to conceal funds from or mislead the government." *Id.*

A jury looking at the record in this case easily could have concluded that, when King filed the false 1983, 1984 and 1987 forms, his intent was to permanently eliminate withholding. Each time the IRS thwarted King's efforts by directing Delco to withhold, King tried again. By maintaining the 1987 form on file, King "continued to perpetrate his initially-intended misrepresentations." *See Williams,* 928 F.2d at 149. It is reasonable to infer that King was banking on Delco honoring his 1987 W–4 indefinitely. King was aware that Delco's practice was to honor an employee's W–4 until directed to do otherwise, and King was also aware that Delco ignored the IRS directives in 1983 and 1984 instructing Delco not to honor any future forms from King that claimed exemption from withholding. "There is no doubt that [King] knew the [1987] form contained false relevant data and that he intended such precisely to prevent the appropriate withholding of his taxes by his employer." *See id.*

 King also argues that the false 1987 Form W–4 could not have deceived Delco or

**994**

the IRS because the evidence showed that both Delco and the IRS were aware of his ineligibility for exempt status at the time he submitted the form, that the IRS received information from Delco concerning the amount of his pay during the relevant years, that the IRS was able to determine his tax liability on its own, and that the IRS did, in fact, levy taxes on his pay. All of this may be true; however, § 7201 is a crime of attempt, and whether King succeeded in his attempt to evade the assessment of income taxes is irrelevant. *See Spies,* 317 U.S. at 498–99, 63 S.Ct. at 368 ("This is an independent crime, complete in its most serious form when the attempt is complete, and nothing is added to its criminality by success or consummation . . . ."); *see also United States v. Coffman,* 94 F.3d 330, 333 (7th Cir.1996) ("[I]f the attempt is merely thwarted, and if completed in accordance with the defendant's understanding of the circumstances would have resulted in a crime, then the attempt is culpable even though it is certain that it would not have succeeded."). All the government needed to show was King's "willful and positive attempt to evade tax in any manner or to defeat it by any means." *Spies,* 317 U.S. at 499, 63 S.Ct. at 368. The government fulfilled its obligation in that regard.

▆▆ Finally, King makes a last-ditch argument that his 1987 Form W–4 makes no claim as to *income* for the years charged in the indictment. This is immaterial. Obviously, no one knows with certainty the exact amount of income he or she will earn in future years. In this case, however, by keeping his 1987 W–4 on file, King was indicating that whatever his income turned out to be in subsequent years, he would be exempt from withholding from those amounts.

---

4. King vehemently argues that § 7201 encompasses two separate crimes, the evasion of the assessment of taxes and the evasion of the payment of taxes. He contends that the relevance of evidence and the types of conduct that must be shown to support a conviction depend on which of the two crimes is being prosecuted. Some cases in this Circuit describe § 7201 as an umbrella for two crimes. *See, e.g., United States v. Eaken,* 995 F.2d 740, 742 (7th Cir.1993); *United States v. Conley,* 826 F.2d 551, 553 n. 1, 557 (7th Cir.1987). We also have cases that proclaim that § 7201 creates a single offense, attempted tax evasion, with two methods of committing the

### C. *Motion In Limine*

▆▆ Prior to trial, King filed a motion in limine asking the court to bar any mention to the jury that he was charged with or actually evaded the *payment* of taxes for the years 1989 through 1993. The district court denied the motion, calling it "frivolous." The court explained:

> The defendant's alleged failure to pay taxes is obviously highly probative of his state of mind with respect to these charges, and the defendant's failures to pay taxes for the relevant years are explicitly identified in the superseding indictment as parts of the charged attempts to evade assessment of tax.

During closing argument, the government made several references to King's failure to pay his taxes. The government specifically mentioned that taxes were not withheld from King's pay during the years charged and that King intended not to pay his taxes. King concedes that the government did nothing improper by arguing to the jury that he did not pay taxes; rather, he sees the prosecutor's comments as arguments to the jury that his conduct constituted evasion of the payment of tax. This, he asserts, is a separate crime from evasion of assessment of tax, the crime with which he was charged, and, therefore, the district court erred in denying his motion in limine.[4] We review the district court's denial of the motion in limine for abuse of discretion. *United States v. Watts,* 95 F.3d 617, 619 (7th Cir.1996). We will find that the district court abused its discretion only if no reasonable person could adopt its position. *United States v. Fauls,* 65 F.3d

---

offense—evasion of assessment and evasion of payment. *See, e.g., United States v. Becker,* 965 F.2d 383, 386 (7th Cir.1992), *cert. denied,* 507 U.S. 971, 113 S.Ct. 1411, 122 L.Ed.2d 783 (1993); *United States v. Dunkel,* 900 F.2d 105, 107 (7th Cir.1990), *cert. granted, judgment vacated and remanded on another ground,* 498 U.S. 1043, 111 S.Ct. 747, 112 L.Ed.2d 768 (1991). The government maintains that the latter interpretation is correct. However, for purposes of this case, the government assumes that the specification of evasion of assessment in the indictment limited the government's theory to that method of violating the statute, so we need not

592, 595 (7th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1697, 134 L.Ed.2d 796 (1996).[5]

We agree with the district court that King's failure to pay his taxes was highly probative of his intent to evade the assessment of his taxes. It would be a rare case in which evasion of assessment was an end in itself. Almost always, one who attempts to evade assessment ultimately wants to evade payment. The prosecutor's comments merely drew attention to what she believed was King's reason for attempting to evade the assessment of tax—he did not want to pay the tax. Moreover, a court may admit evidence of other criminal conduct that is inextricably intertwined with a charged offense or that completes the story of the charged offense. *See United States v. Lahey*, 55 F.3d 1289, 1295 (7th Cir.1995) (discussing "other crimes" evidence under Rule 404(b) of the Federal Rules of Evidence). King's affirmative acts were directed toward both assessment and payment. In other words, his attempts to evade assessment were inextricably intertwined with his attempts to evade payment.

In sum, the district court's comments do not indicate that the court was confused about what King was asking for in his motion in limine or that the court mistakenly believed King was charged with a crime other than that which the indictment charged. The district court did not abuse its discretion in denying King's motion in limine.

### D. *Jury Instructions*

King's final argument is that the district court should have granted his Proposed Jury Instructions Nos. 5 and 6. King's Proposed Jury Instruction No. 5 would have instructed the jury that the government had to prove a separate affirmative act of evasion for each year charged in the indictment at or about the time of the offense alleged in each count of the indictment. King's Proposed Jury Instruction No. 6 would have instructed the

jury that the Forms W–4 that King filed in 1983, 1984 and 1987 expired, as a matter of law, on February 15, 1984, 1985 and 1988, respectively. In reviewing whether the district court properly instructed the jury on a defendant's theory, we examine the instructions as a whole in the context of the overall trial and arguments by counsel. *United States v. Briscoe*, 896 F.2d 1476, 1512 (7th Cir.), *cert. denied*, 498 U.S. 863, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990).

■■■ King was not entitled to his Proposed Jury Instruction No. 5 because it is not a correct statement of law. A defendant is entitled to have the jury instructed on his defense theory if the theory is supported by law and has some foundation in the evidence. *United States v. Jungles*, 903 F.2d 468, 478 (7th Cir.1990). As we have already made clear, it is not necessary for an affirmative act of evasion to have occurred on the offense date alleged in the indictment in order to obtain a conviction under § 7201. *See supra* pp. 991–992.

■■ As for King's Proposed Jury Instruction No. 6, the district court refused to instruct the jury that Forms W–4 that claim total exemption from withholding expire each year because "instructing as to the law on this question where there's no evidence the defendant had knowledge of these specific regulations at a relevant time, or at any time would ... confuse the jury." The court continued that "what's relevant to this issue is [King's] understanding or beliefs about the consequences of filing each of these W–4s at the time of filing." King argues that limiting the relevance of the expiration of the forms to King's state of mind was error. He furthermore claims that he did have knowledge that the Forms W–4 would expire—knowledge that should be imputed to him based on the Form W–4 instruction sheet. *See*

---

discuss whether § 7201 encompasses one or two crimes.

**5.** The government posits that we should review this issue for plain error because King did not object to the prosecutor's closing argument in the district court. We disagree. King's motion in limine was sufficient to preserve his claim of error. *See United States v. Miller*, 884 F.2d 1149,

1151 (9th Cir.1989); *United States v. Hashimoto*, 878 F.2d 1126, 1134–35 (9th Cir.1989). It would have been pointless to require King to have repeatedly renewed his objection, especially in light of the fact that the district court called the objection "frivolous" when King first raised it. Regardless, there was no error under any standard.

*Williams*, 928 F.2d at 149; *supra* pp. 990–991.

Whether the forms technically expired per 26 C.F.R. § 31.3402(f)(4)–2(c)(1) is of no consequence to this case. The significant issue is whether King intended his 1987 W–4 to be honored during the years charged in the indictment. The fact that the forms technically expired would not have helped the jury to decide whether this intent was present. It is only King's awareness that the forms would expire (not knowledge imputed by the Form W–4 instructions) that was relevant. Therefore, it was proper for the district court to deny King's Proposed Jury Instruction No. 6.

### CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.