UNITED STATES of America, Plaintiff,

v.

Warren J. BURDETT, Defendant.

No. CR 91–00340.

United States District Court,
E.D. New York.

July 30, 1991.

Andrew J. Maloney, U.S. Atty. by Douglas S. Burns, Asst. U.S. Atty., Garden City, N.Y., for plaintiff.

Larry M. Lopez, Denver, Colo., for defendant.

WEXLER, District Judge.

## MEMORANDUM AND ORDER

Defendant Warren J. Burdett ("defendant" or "Burdett") moves to dismiss the counts of his indictment which charge him with knowingly and willfully attempting to evade income taxes, pursuant to 26 U.S.C. § 7203, owed for the years 1984 and 1985. Burdett alleges that the Internal Revenue Service ("IRS") failed to comply with the Paperwork Reduction Act of 1980 ("PRA" or "the Act"), 44 U.S.C. § 3501, *et seq.*, by not displaying Office of Management and Budget ("OMB") control numbers or expiration dates on its Form 1040 instruction booklet and implementing regulations. For the reasons set forth below, this Court finds defendant's contentions to be without merit.

*The PRA*

The PRA was designed "to reduce and minimize the burden Government paperwork imposes on the public." S.Rep. No. 930, 96th Cong., 2d Sess. 2, *reprinted in* 1980 U.S.Code Cong. & Admin. News 6241, 6242 [hereinafter S.Rep. No. 930]. As

codified at 44 U.S.C. § 3501, the purposes of the Act are:

(1) to minimize the Federal paperwork burden for individuals, small businesses, State and local governments, and other persons;

(2) to minimize the cost to the Federal Government of collecting, maintaining, using, and disseminating information;

(3) to maximize the usefulness of information collected, maintained, and disseminated by the Federal Government;

(4) to coordinate, integrate and, to the extent practicable and appropriate, make uniform Federal information policies and practices;

(5) to ensure that automatic data processing, telecommunications, and other information technologies are acquired and used by the Federal Government in a manner which improves service delivery and program management, increases productivity, improves the quality of decisionmaking, reduces waste and fraud, and wherever practicable and appropriate, reduces the information processing burden for the Federal Government and for persons who provide information to and for the Federal Government; and

(6) to ensure that the collection, maintenance, use and dissemination of information by the Federal Government is consistent with applicable laws relating to confidentiality, including section 552a of title 5, United States Code, known as the Privacy Act.

44 U.S.C. § 3501; *see, generally, Dole v. United Steelworkers,* 494 U.S. 26, 110 S.Ct. 929, 108 L.Ed.2d 23 (1990).

Under the Act, a federal agency must submit to the Director of the OMB any "written report form, application form, schedule, questionnaire, reporting or recordkeeping requirement, collection of information requirement or other similar method calling for the collection of information [from the public]." 44 U.S.C. §§ 3502(11), 3507. These forms and requirements are known throughout the Act as "information collection requests." The Director of the OMB must approve or reject the agency's proposed information collection request within sixty days of receiving it.[1] *Id.* at § 3507(b). If the Director approves the request, he must assign it a control number. *Id.* at § 3504. An agency may not engage in the collection of information unless the Director has assigned a control number to the appropriate form.[2] *Id.* at § 3507(f). This number must be displayed in the upper right hand corner of the front page of the form. *Id.; see also* 5 C.F.R. § 1320.7(e)(1).

■ Federal income tax forms were among the many paperwork burdens imposed on the public which the PRA was created to alleviate. S.Rep. No. 930 at 2; *see also, Dole v. United Steelworkers,* 494 U.S. 26, 110 S.Ct. 929, 108 L.Ed.2d 23 (1990); *United States v. Collins,* 920 F.2d 619, 630 (10th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2022, 114 L.Ed.2d 108 (1991). Accordingly, in 1981, the Treasury Department submitted approximately 700 IRS forms to the OMB for approval and assignment of control numbers. Alexander, *Review of Tax Regulations and Rulings by The Office of Management and Budget (by the Committee on Tax Policy of the New York State Bar Association Tax Section),* Tax Notes October 3, 1983 at 6. It is to be noted that in the case at bar, the tax return forms that Burdett failed to file—the IRS's 1040 forms for 1984 and 1985—displayed OMB numbers as required by the Act.

Defendant argues that the Internal Revenue Service failed to comply with the Paperwork Reduction Act in that the IRS Form 1040 instruction booklets and imple-

---

**1.** The Director may extend the review period for an additional thirty days by notifying the agency which submitted the request. 44 U.S.C. § 3507(b).

**2.** OMB approval for an information collection request may be inferred if the Director does not notify the agency of an extension, approval, or denial within sixty days of receiving the proposal (or within ninety days if the Director extends the review period). A form may be assigned to a control number when approval is inferred but the agency may not collect information from that form for more than a year. 44 U.S.C. § 3507(b).

menting regulations do not display OMB control numbers and expiration dates. In particular, he cites the "public protection" provision of the PRA and *United States v. Smith*, 866 F.2d 1092 (9th Cir.1989), in support of the theory that noncompliance by a federal agency with the PRA precludes the government from imposing civil or criminal penalties on persons who fail to answer information collection requests. The "public protection" provision of the PRA, 44 U.S.C. § 3512, states:

> Notwithstanding any other provision of law, no person shall be subject to any penalty for failing to maintain or provide information to any agency if the information collection request involved was made after December 31, 1981, and does not display a current control number assigned by the Director, or fails to state that such request is not subject to this chapter.

In *Smith,* 866 F.2d 1092, the appellants challenged their convictions for residing and working on an unpatented mining claim without having filed a Plan of Operations with the United States Forest Service, in violation of 36 C.F.R. § 228.4. They argued that the Alaska Placer Mining Application Form, which the Forest Service would have accepted as a Plan of Operations, was an information collection request which did not satisfy the PRA because it lacked a current control number. The Ninth Circuit agreed with the appellants and reversed the convictions.[3] The court held that "PRA section 3512 by its terms prohibits the imposition of 'any penalty' against the appellants, including criminal convictions, for their failure to comply with the Plan of Operations filing requirement." *Id.* at 1099.

■ The public protection provision was designed to create an incentive for federal agencies and the OMB to comply with the requirements of the PRA. *See* Funk, *The Paperwork Reduction Act: Paperwork Reduction Meets Administrative Law,* 24

Harv.J. on Legis. 1, 70–78 (1987). This section encourages the public to ignore information collection requests which do not display current control numbers. Persons who receive information collection requests which do not conform with the Act may consider the requests as "bootleg" and avoid penalty. S.Rep. No. 930 at 52.

*The PRA and the Case at Bar*

■ However, Congress did not intend the IRS regulations and instruction booklets to be information collection requests within the meaning of the PRA. *Brewer v. United States,* 764 F.Supp. 309 (S.D.N.Y.1991); *United States v. Crocker,* 753 F.Supp. 1209, 1216 (D.Del.1991) ("1040 form instruction booklets are not themselves 'information collection requests' that must display OMB control numbers"); *United States v. Stiner,* 765 F.Supp. 663 (D.Kan.1991) (instruction booklets do not constitute information collection requests under 44 U.S.C. § 3502(11)); *United States v. Karlin,* 762 F.Supp. 911, 913 (D.Kan. 1991). ("instruction booklets are not covered by the PRA's requirements"). The Senate Report described an "information collection request" as "the actual instrument used for a collection of information." S.Rep. No. 930 at 39. Thus, in the Court's view, materials which the government provides to assist taxpayers with the completion of tax forms are not information collection requests. Likewise, regulations such as those of the IRS which are not classified as "collection of information requirement[s]" under section 3502(11) are not required to comply with the PRA. Therefore, the PRA does not require the IRS to display OMB control numbers or expiration dates on the regulations or instruction booklets.

■ Burdett also asserts that the public protection provision mandates that he may not be penalized for failing to file his tax returns since the 1040 Forms do not display

---

**3.** In his supplemental memorandum, defendant also cites *United States v. Hatch,* 919 F.2d 1394 (9th Cir.1990), in which the Ninth Circuit reversed a miner's conviction for constructing a road on National Forest Service land without authorization or an approved operations plan. Like Smith, the defendant in Hatch argued that the Operating Plan forms given to him failed to display an OMB current control number as required by 44 U.S.C. § 3507(f).

an OMB expiration date. Although the public protection provision requires control numbers on information collection requests to be "current," there is no explicit requirement in the PRA that forms must display an expiration date. *See United States v. Collins,* 920 F.2d at 631. On the contrary, one of the functions of the Director of the OMB is to insure that all information collection requests "are inventoried, display a control number, and *when appropriate,* an expiration date." 44 U.S.C. § 3504(c)(3)(A) (emphasis supplied). Each 1040 Form contains the year of its effective coverage, *United States v. Collins,* 920 F.2d at 631, and an expiration date on the form may confuse taxpayers.[4] *See also United States v. Pottorf,* No. 91–20017–01, —— F.Supp. —— 1991 WL 119997 (D.Kan. June 26, 1991). Accordingly, the 1040 Forms do not need expiration dates to notify the public that they are "current" within the meaning of the public protection provision.

In the relatively brief history of the PRA, the Second Circuit has faced very few cases in which an appellant has used the Act as an affirmative defense. In *United States v. Weiss,* 914 F.2d 1514 (2d Cir.1990), *cert. denied sub nom., Gleicher v. United States,* —— U.S. ——, 111 S.Ct. 2888, 115 L.Ed.2d 1053 (1991), the appellants challenged their convictions for mail fraud, mail fraud conspiracy, and making false representations of material facts on Medicare and Medicaid claims. The appellants asserted that the government failed to comply with the Act by not displaying an OMB control number on Form 1500, the official form for submitting Medicare claims. The court held, *inter alia,* that the

public protection provision did not protect people for providing *false* information on Medicare forms. It noted that the provision only protected people from any penalty for *failing* to provide information to a government agency. *Id.* at 1521.

■ The *Weiss* case is clearly distinguishable from the case at bar. Eligible persons may receive Medicare and Medicaid benefits by *voluntarily* filing forms to the government and participating in the programs as providers. They are not subject to any penalties, civil or criminal, for a failure to file. On the other hand, the requirement to file tax returns is mandated by statute. *See* 26 U.S.C. §§ 6012, 7203. The PRA does not bar the imposition of penalties on those who fail to comply with a legal duty. *United States v. Wunder,* 919 F.2d 34, 38 (6th Cir.1990); *United States v. Karlin,* 762 F.Supp. 911, 912 (D.Kan.1991). Thus, in this Court's view, the public protection provision does not immunize Burdett from being subjected to criminal penalties for his failure to comply with his statutory duty to file tax returns.[5]

Aside from the reasons stated above, and after an exhaustive review of the PRA and its legislative history, this Court concludes that Congress never intended the Act to apply to criminal proceedings in general. None of Congress' enumerated purposes for enacting the PRA[6] would be served by allowing people to willfully and knowingly commit criminal acts and escape prosecution because an information collection request inadvertently lacked an OMB control number. Congress has specifically enacted criminal statutes which punish people for failing to provide the government with cer-

---

4. The Federal Register notes that "OMB recognizes ... that under some circumstances display of the expiration date would not serve any useful purpose and might instead create confusion and unnecessary cost to the public. An example would be an annually revised Form, such as a tax form, which applies to transactions within a particular year but which may be filed during many years. The regulation provides for appropriate treatment of such exceptional cases." 48 Fed.Reg. 13666, 13676 (codified at 5 C.F.R. § 1320).

5. For purposes of the PRA, "penalty" is defined as the "imposition by an agency or court of a fine or other punishment; judgment for monetary damages or equitable relief; or revocation, suspension, reduction, or denial of a license, privilege, right, grant, or benefit." 5 C.F.R. § 1320.7(m). This Court notes that the language of this definition evidences the OMB's intent to protect the public only from penalties that are civil in nature. The definition of "penalty" does not explicitly state or allude to the application of criminal prosecutions.

6. *See* 44 U.S.C. § 3501.

tain information.[7] Interpretations of the Act which insulate defendants from criminal responsibility inherently disregard the Act's objectives.

If Congress intended the PRA to give additional rights to criminal defendants, it could have done so explicitly. Yet the only reference Congress makes to criminal prosecutions is found at 44 U.S.C. § 3518, entitled "Effect on existing laws and regulations". That section states, in relevant part:

> (c)(1) ... [T]his chapter does not apply to the collection of information—

> (A) during the conduct of a Federal criminal investigation or prosecution, or during the disposition of a particular criminal matter....

The legislative history of section 3518(c)(1)(A) indicates that "[t]he collections of information covered by the exemption for the conduct of criminal investigation, prosecution or deposition of a particular matter include direct actions by attorneys, courts, investigators, or probation, pardon, parole, or correctional authorities to collect information." S.Rep. No. 930 at 56, 1980 U.S.Code Cong & Admin.News 6296. Although Congress did not explicitly address the use of the PRA as an affirmative defense in a criminal proceeding, this section indicates that Congress did not intend the Act to impair prosecutors in their duty to bring criminals to justice.

In this Court's experience, a number of criminal defendants have attempted to use the PRA as a shield for their criminal behavior. Like Burdett, these defendants often cite the Ninth Circuit decisions in *Hatch* and *Smith*. However, an accurate interpretation of the public protection provision requires "a look to the provision of the whole law, and to its object and policy." *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 51, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987). In short, this Court views the application of the PRA as a defense to a criminal charge to be an unintended pos-

ture, Ninth Circuit precedent notwithstanding.

Moreover, this Court's interpretation of the PRA and its public protection provisions are not devoid of judicial support. In *United States v. Karlin*, 762 F.Supp. 911 (D.Kan.1991), the defendant moved to dismiss a prosecution for tax evasion. He based his motion on the alleged failure of the tax instruction booklets to comply with the PRA. In rejecting the defendant's argument, the court noted, *inter alia*, that "[44 U.S.C.] § 3512 only protects persons from the imposition of *administrative* penalties for the failure to comply with information requests which do not conform to PRA requirements." *Id.* at 912 (emphasis supplied). Concededly, there is no Second Circuit precedent directly on point. However, in *Weiss* the Second Circuit rejected the defense of the PRA where the defendants affirmatively misrepresented the information sought by the forms in question. 914 F.2d at 1521. Thus, although the Second Circuit did not take the opportunity to find the PRA inapplicable to criminal proceedings, the Court did not need to reach that broader question, given its ultimate disposition. This Court currently has the opportunity to do so, and finds that the PRA does not stand as a defense to a *criminal* prosecution.

### CONCLUSION

In sum, both the language and purpose of the PRA compel the Court to find that defendant's arguments in support of his motion to dismiss are completely without merit. Accordingly, for all the reasons stated above, defendant's motion to dismiss is denied.

SO ORDERED.

---

7. *See, e.g.,* 26 U.S.C. § 7203 (criminal penalties for failure to file tax returns); 42 U.S.C. § 6928(d) (criminal penalties for generating, treating, storing, and disposing hazardous waste for failing to file required reports).