**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Erwin R. WUNDER, Defendant–Appellant.**

**No. 89–3618.**

United States Court of Appeals, Sixth Circuit.

Argued Sept. 18, 1990.

Decided Sept. 28, 1990.

Patrick Hanley, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Cincinnati, Ohio, for plaintiff-appellee.

Trisha Zeller James (argued), James & James, Louisville, Ky., for defendant-appellant.

Harvey A. Levin, Office of Thrift Supervision, Washington, D.C., for Office of Thrift Supervision.

Before KENNEDY and GUY, Circuit Judges, and PECK, Senior Circuit Judge.

PER CURIAM.

Defendant, Erwin Wunder, was found guilty of willful failure to file income tax returns for the years 1979, 1980, and 1981, in violation of 26 U.S.C. § 7203. Wunder filed 1040 forms for each of the years in question but failed to provide any financial information, instead asserting his fifth amendment right against self-incrimination.

On appeal, Wunder claims that the district court directed a verdict against him and that he suffered from ineffective assistance of counsel. Finding no merit to these claims, we affirm.

I.

■ For well over 20 years, tax protestors such as defendant Wunder have been filing blank 1040 forms claiming a fifth amendment privilege against self-incrimination as the justification for failing to provide the required financial information. Apparently working from some type of kit or tax protestors' handbook, they advance time and time again the same discredited arguments involving the use of the fifth amendment. We have consistently held that when a 1040 is filed in this manner it does *not* constitute the filing of a return.

This Circuit has held that a tax return which contains no information from which tax liability can be calculated does not constitute a tax return within the meaning of the Internal Revenue Code. *See United States v. Mundt,* 666 F.2d 1029 (6th Cir.1981); *United States v. Evanko,* 604 F.2d 21, 23 (6th Cir.1979), *cert. denied,* 444 U.S. 1024, 100 S.Ct. 685, 62 L.Ed.2d 657 (1980), citing *United States v. Jordan,* 508 F.2d 750, 752 (7th Cir.), *cert. denied,* 423 U.S. 842, 96 S.Ct. 76, 46 L.Ed.2d 62 (1975); *United States v. Daly,* 481 F.2d 28, 29 (8th Cir.), *cert. denied,* 414 U.S. 1064, 94 S.Ct. 571, 38 L.Ed.2d 469 (1973). Other circuits also have held that the failure to provide any information in a tax return is tantamount to failure to file any return at all. *See, e.g., United States v. Pilcher,* 672 F.2d 875, 877 (11th Cir.), *cert. denied,* [459] U.S. [973], 103 S.Ct. 306, 74 L.Ed.2d 286 (1982); *Beatty v. Commissioner of Internal Revenue,* 667 F.2d 501, 502 (5th Cir.1982); *United States v. Booher,* 641 F.2d 218, 219 (5th Cir.1981); *United States v. Edelson,* 604 F.2d 232, 234 (3rd

Cir.1979); *United States v. Brown*, 600 F.2d 248, 251 (10th Cir.), *cert. denied*, 444 U.S. 917, 100 S.Ct. 233, 62 L.Ed.2d 172 (1979); *United States v. Pryor*, 574 F.2d 440, 442 (8th Cir.1978). Therefore, [defendant's] failure to provide the proper financial data on his tax returns amounted to a total failure to file a return. This cannot be justified under the fifth amendment.

*United States v. Heise*, 709 F.2d 449, 451 (6th Cir.), *cert. denied*, 464 U.S. 918, 104 S.Ct. 285, 78 L.Ed.2d 262 (1983).

The defendant, in this case at least, has a variation on the theme. The district judge, when instructing the jury, told them: "And, accordingly, I do instruct you as a matter of law that the forms 1040 for 1979, 1980, 1981 contained in Exhibit 1E4 are not tax returns."

Wunder argues that this statement to the jury constituted directing a verdict in favor of the government. We disagree. The province of the court in a jury trial is to decide issues of law, instruct the jury on the law, and let the jury decide the facts. This circuit has held that the 1040 forms, such as those filed by the defendant, do not constitute a return as a matter of law, and the jury was properly told so. There was no factual dispute (indeed, there could not be one) on this issue. This was not tantamount to directing a verdict, however, as the defendant still had the issue of "willfulness" before the jury, which was clearly his primary defense. Cases relied upon by the defendant, such as *United States v. Mentz*, 840 F.2d 315 (6th Cir.1988), are clearly distinguishable. In *Mentz*, the court instructed the jury in a bank robbery prosecution that the bank in question was insured by the FDIC even though this *fact* was disputed. This clearly was an incursion by the court into the province of the jury to make factual determinations. There is a difference between telling a jury that something has occurred about which there is a dispute and telling them the legal consequences of an undisputed fact. The former is a jury matter; the latter, one for the court.

We note additionally that defendant did not object to the instruction as given by the court:

MR. HALPRIN: Your Honor, the Porth case, among others, clearly makes it obvious that this is not a tax return.

THE COURT: Well, that's easy, and I intend to—

MR. HALPRIN: Explain that?

THE COURT: No, no. I'm going to go further. I'm going to instruct the jury that, as a matter of law—

MR. HALPRIN: That it's not a tax return?

THE COURT:—those exhibits are not tax returns, period.

MR. HALPRIN: That's fine. Again, what I would like to encourage, though, is that the general issue of what Fifth Amendment law in this circuit actually is appropriate for the jury. I don't object to Mr. Hanley's statement that, in fact, the Fifth Amendment has to be taken on a question-by-question basis, that a blanket assertion of the privilege is improper.

I don't object to your issuing an instruction that the United States shouldn't have to accept a return that has no information, but I would also like there to be some statement that the Supreme Court has repeatedly acknowledged that one does have the right to assert the Fifth Amendment on a tax return in specific ways.

. . . .

Gentlemen, the record will disclose that at a time prior to final argument the Court met with counsel, advised as to the instructions that would be given and dealt also with submitted instructions. Aside and apart from your position on those instructions, which are a matter of record, is there anything further upon which you wish this jury instructed?

Mr. Hanley?

MR. HANLEY: No, Your Honor.

THE COURT: Mr. Halprin?

MR. HALPRIN: No, Your Honor.

THE COURT: Ladies and gentlemen, you may now proceed to the jury room.

(Trial Trans. at 20, 40).

Unobjected to jury instructions may not be questioned on appeal unless plain error is involved. Fed.R.Civ.P. 51. As we have

indicated, we find no error, plain or otherwise, in the instructions given.

## II.

■ As a general rule, a defendant may not raise ineffective assistance of counsel claims for the first time on direct appeal, since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations. *United States v. Hill*, 688 F.2d 18, 21 (6th Cir.), *cert. denied*, 459 U.S. 1074, 103 S.Ct. 498, 74 L.Ed.2d 638 (1982). The customary procedure followed in this situation by the various circuits is to permit the defendant to raise his ineffectiveness of counsel claim in a proper post-conviction proceeding under 28 U.S.C. § 2255. When, however, the record is adequate to assess the merits of the defendant's allegations, some courts will consider them. *See United States v. Hilliard*, 752 F.2d 578 (11th Cir.1985). We believe such an exception is applicable in this case.

■ Defendant first argues that his counsel was ineffective in that he did not insist that the court give a fifth amendment instruction. There are two deficiencies in this argument. The first, and most significant, is that the court did give a fifth amendment instruction, which included telling the jury that a good faith misunderstanding of the law could negate willfulness—Wunder's primary theory of defense. Second, the defendant was not entitled to have the jury told that a 1040 form that provided no financial information, and, in lieu thereof, merely made a claim of privilege under the fifth amendment, could be construed as the filing of a proper return.

■ Wunder next claims that his counsel failed to object to the introduction of the tax due and owing computations offered by the prosecution for the tax years in question. Although these computations were not necessary to prove the necessity for filing a return, they were admissible on the issue of willfulness.

Appellant also asserts, as a subordinate claim of error, that the government's introduction of his tax liability for the three years for which he failed to file returns was admitted erroneously since it was irrelevant and prejudicial. He argues that, while gross income to establish that appellant was required to file a return is an element of a § 7203 violation, the actual amount of taxes claimed to be due is irrelevant and prejudicial. We find this argument to be without merit. . . .

*United States v. Schmitt*, 794 F.2d 555, 560 (10th Cir.1986). It is true that the taxpayer in *Schmitt* derived his income entirely from wages, whereas Wunder had income from both wages and investments. This fact becomes relevant because the government's computations were based on use of the standard deduction (based upon the paucity of information furnished by the taxpayer, that is all they could be based on), whereas it is *possible* that Wunder may have had deductions in excess of those taken into account by the application of the standard deduction. The jury was not given this exhibit to take to the jury room, however, until the bottom line figures showing the amount due and owing were deleted. This, coupled with the fact that Wunder structured his defense around trying to convince the jury that he had a good faith belief that he could plead the fifth amendment privilege in his returns, leads us to believe that if any error was committed here, it was harmless as a matter of law. Since there was no prejudice, the second prong of the test for ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), cannot be met:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Defendant's final argument in support of his ineffective assistance of counsel claim is that the "implications of the Paperwork Reduction Act of 1980 were never raised." The Paperwork Reduction Act of 1980 (PRA), 44 U.S.C. § 3501 *et seq.*, prohibits:

[A]ny federal agency from adopting regulations which impose paperwork requirements on the public unless the information is not available to the agency from another source within the Federal Government, and the agency must formulate a plan for tabulating the information in a useful manner. Agencies are also required to minimize the burden on the public to the extent practicable. See 44 U.S.C. § 3507(a)(1) (1982 ed. and Supp. V). In addition, the Act institutes a second layer of review by OMB for new paperwork requirements. After an agency has satisfied itself that an instrument for collecting information—termed an "information collection request"—is needed, the agency must submit the request to OMB for approval. See 44 U.S.C. § 3507(a)(2) (1982 ed., Supp. V). If OMB disapproves the request, the agency may not collect the information. See 44 U.S.C. § 3507(a)(3) (1982 ed.).

*Dole v. United Steelworkers of America,* — U.S. ——, 110 S.Ct. 929, 933, 108 L.Ed.2d 23 (1990).

Furthermore, the PRA provides that:

Notwithstanding any other provision of law, no person shall be subject to any penalty for failing to maintain or provide information to any agency if the information collection request involved was made after December 31, 1981, and does not display a current control number assigned by the Director, or fails to state that such request is not subject to this chapter.

44 U.S.C. § 3512. At least one court has reversed a criminal conviction on the basis of section 3512. *See United States v. Smith,* 866 F.2d 1092 (9th Cir.1989).

Although the defendant constructs an elaborate argument as to why section 3512 should apply to this case, and hence implicate his counsel's alleged ineffectiveness for not raising this issue, we are unable to see how section 3512 is relevant. This section, by its terms, applies only to information requests made after December 31, 1981. The tax years in question here were 1979, 1980, and 1981. Clearly, tax returns for 1979 and 1980 would not be affected by the PRA. As for the 1981 return, it did display the appropriate control number, and the regulations do not need a number because the requirement to file a tax return is mandated by statute, not by regulation. Defendant was not convicted of violating a regulation but of violating a statute which required him to file an income tax return. *See* 26 U.S.C. §§ 6012 and 7203. The Paperwork Reduction Act, therefore, does not apply to the statutory requirement, but only to the forms themselves, which contained the appropriate numbers.

AFFIRMED.