UNITED STATES of America,
Plaintiff–Appellee,

v.

Robert W. HICKS, Defendant–Appellant.

No. 90–10564.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 16, 1991.

Decided Oct. 16, 1991.

Donald W. MacPherson, MacPherson & McCarville, Phoenix, Ariz., for defendant-appellant.

Robert L. Miskell, Tucson, Ariz., and Darcy A. Cerow, Phoenix, Ariz., Asst. U.S. Attys., for plaintiff-appellee.

Before CHOY and SNEED, Circuit Judges, and KELLEHER,* District Judge.

SNEED, Circuit Judge:

Robert W. Hicks appeals his conviction for willful failure to file tax returns for the four years 1983 through 1986. Hicks argues that the Internal Revenue Service's alleged failure to comply with the Paperwork Reduction Act precludes his being penalized for failing to file a return, that the charges against him must be dismissed because the IRS did not publish the 1040 tax return form as a rule in the Federal Register pursuant to the Administrative Procedure Act, that he was not granted jury panel tax information to which he was entitled, and that venue was improper. The district court found no merit to Hicks's arguments. We agree, and affirm.

* Honorable Robert J. Kelleher, District Judge for the Central District of California, sitting by designation.

## I.

### FACTS AND PROCEEDINGS BELOW

Hicks, an Arizona resident, was charged in the district of Arizona with four counts of willful failure to file tax returns, one count for each of the years 1983 through 1986, in violation of 26 U.S.C. § 7203. Before trial, Hicks represented himself. He retained court-appointed counsel at trial.

Hicks filed a pretrial motion that we interpret as a motion to dismiss the charges for lack of proper venue. The district court denied this motion.

Hicks also filed a pretrial motion seeking a list of prospective jurors, so that he might obtain tax information about the jurors pursuant to 26 U.S.C. § 6103(h)(5).[1] Rather than furnishing Hicks with the juror list, the district court responded to Hicks's motion by ordering the list to be sent directly to the IRS, along with an inquiry whether any of the prospective jurors had ever been subject to a criminal investigation or had been subject to a civil investigation within the last six years. Hicks did not object to the form of the court's order. On the morning of trial, the court supplied Hicks and the prosecution with the IRS inquiry responses. During voir dire, the court asked the panel whether they or their family members had ever been audited or investigated by the IRS. The record does not indicate how many prospective jurors, if any, responded affirmatively to these questions. One prospective juror who said his son had been investigated for failure to pay payroll taxes was not selected for the panel. At the conclusion of voir dire, Hicks remained silent when given the opportunity to raise any problems he might have had with the list he received. He also never requested a continuance.

At the close of the prosecution's case in chief, Hicks filed motions for judgment of

acquittal, arguing, as he does here, that the IRS violated the Paperwork Reduction Act by its failure to display Office of Management and Budget (OMB) control numbers and expiration dates on Form 1040 and associated instruction booklets and regulations, and that the IRS violated the Administrative Procedure Act by failing to publish Form 1040 and associated instruction booklets and regulations in the Federal Register. The district court denied these motions.

The jury found Hicks guilty on all four counts. The court sentenced Hicks to three consecutive one-year sentences for the first three counts, followed by five years' probation for the fourth count. The court also levied a $10,000 fine for each count.

On appeal, Hicks does not contest the finding that he did not file personal income tax returns for the years in question. However, he renews the legal arguments he raised in his motions, and asserts that he should be acquitted as a matter of law, or, alternatively, that his case should be reversed and remanded for a new trial.

## II.

### JURISDICTION AND STANDARD OF REVIEW

This court has jurisdiction pursuant to 28 U.S.C. § 1291. Hicks raises only issues of law, which this court reviews de novo. *See United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

## III.

### ANALYSIS

A. *Form 1040: Compliance with the Paperwork Reduction Act (PRA)*

The public protection provision of the Paperwork Reduction Act of 1980, Pub.L.

---

**1.** This section states:

In connection with any judicial proceeding described in paragraph (4) [tax proceedings] to which the United States is a party, the Secretary shall respond to a written inquiry from an attorney of the Department of Justice (including a United States attorney) involved in such proceeding or any person (or his legal

representative) who is a party to such proceeding as to whether an individual who is a prospective juror in such proceeding has or has not been the subject of any audit or tax investigation by the Internal Revenue Service. The Secretary shall limit such response to an affirmative or negative reply to such inquiry.

No. 96–511, 94 Stat. 2812 (*codified at* 44 U.S.C. § 3501 et seq.), states: "Notwithstanding any other provision of law, no person shall be subject to any penalty for failing to ... provide information to any agency if the information collection request involved ... does not display a current [OMB] control number...." 44 U.S.C. § 3512. The PRA and regulations promulgated under the PRA require that federal government agency information collection requests display OMB control numbers and, when appropriate, expiration dates. 44 U.S.C. § 3504(c)(3)(A); 5 C.F.R. § 1320.4; *see* 5 C.F.R. § 1320.7 (defining "display"). Hicks argues that the IRS failed to comply with the PRA by not putting control numbers on the regulations associated with tax return Form 1040 in 1983. He argues further that the public protection provision of the PRA should be read together with OMB regulations to require that expiration dates as well as control numbers be displayed, and points out that Form 1040 and its associated regulations and instruction booklets for 1983 through 1986 bore no such expiration dates.[2] Therefore, Hicks believes that while he may be made to pay his back taxes, he cannot be fined or imprisoned for his violations.

■ We cannot agree. The IRS, like any federal agency, must comply with the PRA and, in particular, must display OMB control numbers on its tax return forms and on its regulations. *See Dole v. Steelworkers*, 494 U.S. 26, 110 S.Ct. 929, 933, 108 L.Ed.2d 23 (1990) (tax forms are typical of the information requests subject to the PRA). But even assuming without deciding that the IRS failed to comply with the PRA here, its failure does not prevent Hicks from being penalized.

■ The legislative history of the PRA and its structure as a whole lead us to conclude that it was aimed at reining in *agency* activity. *See* S.Rep. No. 930, 96th Cong.2d Sess., *reprinted in* 1980 U.S.C.C.A.N. 6241 (legislative history of PRA). Where an agency fails to follow the PRA in regard to an information collection request that the agency promulgates via regulation, at its own discretion, and without express prior mandate from Congress, a citizen may indeed escape penalties for failing to comply with the agency's request. *See, e.g., United States v. Hatch*, 919 F.2d 1394 (9th Cir.1990); *United States v. Smith*, 866 F.2d 1092 (9th Cir.1989). But where *Congress* sets forth an explicit statutory requirement that the citizen provide information, and provides statutory criminal penalties for failure to comply with the request, that is another matter. This is a legislative command, not an administrative request. The PRA was not meant to provide criminals with an all-purpose escape hatch. *See United States v. Burdett*, 768 F.Supp. 409 (E.D.N.Y.1991); *see also United States v. Wunder*, 919 F.2d 34, 38 (6th Cir.1990) ("Defendant was not convicted of violating a regulation but of violating a statute which required him to file an income tax return.").

■ Moreover, the provision of the tax code under which Hicks was convicted predates the PRA by over 25 years. If, in enacting the PRA, Congress had intended to repeal 26 U.S.C. § 7203, it could have done so explicitly. Repeals by implication are not favored. *Morton v. Mancari*, 417 U.S. 535, 549, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974). Congress enacted the PRA to keep agencies, including the IRS, from deluging the public with needless paperwork. It did not do so to create a loophole in the tax code.

We hold that the public protection provision of the PRA, 44 U.S.C. § 3512, constitutes no defense to prosecution under 26

---

**2.** Hicks makes much of the fact that 5 C.F.R. §§ 1320.4, 1320.7 state that an expiration date is required "unless" the OMB says otherwise. He argues that this should be interpreted to mean that an expiration date must be present unless the agency receives an explicit dispensation from OMB. We note that Hicks ignores the language of the statute itself, which says that an

expiration date is to be displayed "when appropriate" rather than "unless inappropriate." However, in view of our holding that IRS noncompliance with the PRA cannot exonerate Hicks from his 26 U.S.C. § 7203 violation, we need not decide whether a "when" or "unless" interpretation is preferable.

U.S.C. § 7203. To hold otherwise—to interpret the PRA without reference to Congress' purpose—would be to elevate form over substance.

### B. *Form 1040: Compliance with the Administrative Procedure Act (APA)*

■ Hicks argues that IRS Form 1040 is a "rule" under the Administrative Procedure Act, 5 U.S.C. §§ 551–559, and must, therefore, be published in the Federal Register according to 5 U.S.C. § 552(a)(1). The IRS's failure to publish, he argues, eliminates any legal duty that might have required him to file income tax returns. Further, because the IRS did not promulgate Form 1040 according to the APA notice and comment procedures, 5 U.S.C. § 553, the "rule" is invalid and there is no duty for any taxpayer to file a tax return.

■ Hicks's argument is meritless. It confuses law with regulations with respect to such law. It is the tax code itself, without reference to regulations, that imposes the duty to file a tax return. *See United States v. Bowers*, 920 F.2d 220, 222 (4th Cir.1990) (upholding defendants' conviction under 26 U.S.C. § 7201). However, even if we suppose that the duty to file tax returns can be understood only with reference to regulations, the IRS has duly promulgated sufficient regulations, *e.g.*, 26 C.F.R. §§ 1.6011–1, 1.6012–1, to make that duty clear. The meaning of "willful failure to make a tax return" is apparent without reference to the contents of Form 1040 or its instructions. Hicks cannot complain that he did not know what was expected of him. He had a duty to make a tax return, and chose to ignore that duty.

Hicks's reliance on *United States v. Reinis*, 794 F.2d 506 (9th Cir.1986), is misplaced. As the Fourth Circuit noted in *Bowers, Reinis* involved unpublished rules (specifically, instructions for a Currency Transaction Report Form) that imposed "substantive obligations beyond those created by the statute itself." *Bowers*, 920 F.2d at 222 n. 2. Only by publication could this obligation become known. The 1040 form, by contrast, did not add to Hicks's basic substantive obligation. That obli-

gation is to comply with the applicable provisions of the Internal Revenue Code. The code requires that persons such as Hicks make a return. 26 U.S.C. § 6012. While it is true that the regulations state that filing a Form 1040 is the preferred manner of making a return, it is by no means the only manner of filing. 26 C.F.R. 1.6012–1(a)(6). Knowing the code and the regulations, and no more, is enough to enable Hicks to attempt to comply with the obligation to file a return. He did not need to consult a 1040 form or its instructions. *See also* 26 C.F.R. 1.6011–1(b) (taxpayer is not penalized for filing a makeshift return pending the filing of a proper return). It follows that Form 1040 is not a "rule" subject to the complicated publication, notice, and comment requirements of the APA.

### C. *Disclosure of Juror Information Under 26 U.S.C. § 6103(h)(5)*

Hicks argues that it was improper for the trial court, rather than a party, to issue the request for juror tax information to the IRS. He argues further that the trial court improperly limited the scope of its request to a term of years, citing in support *United States v. Sinigaglio*, 942 F.2d 581, 583 (9th Cir.1991) (as amended) (holding that trial court erred when it limited audit history request to last six years).

■ This court has recognized that the trial court may need to issue a § 6103 request to assure the IRS that the request is legitimate. *See United States v. Hashimoto*, 878 F.2d 1126, 1132 (9th Cir.1989). As long as each side receives the prospective list with the relevant answers in a timely manner, there is no error.

■ Hicks is correct in his assertion that the trial court improperly limited the scope of its request. However, Hicks failed to allege any prejudice arising from the trial court's decision, and cannot demonstrate that he was prejudiced in any way. In contrast to the situation in *Sinigaglio*, no serious discrepancy arose between the information received from the IRS and the information elicited in voir dire. We find that any error by the trial court was harmless. *United States v. Hardy*, 941 F.2d

893, 896 (9th Cir.1991) (adopting a harmless error analysis for this type of case).

D. *Venue*

 Hicks asserts that his motions regarding improper venue were erroneously denied. He argues that as an Arizona resident, he was required to file his tax returns with the IRS service center in Ogden, Utah, and that therefore the site of his offenses was Utah. Because he is entitled to be prosecuted in the district where his offenses were committed, he says, venue properly lay in Utah, not Arizona. This argument, although superficially plausible, is meritless. "Failure to file a tax return is an offense either at the defendant's place of residence, or at the collection point where the return should have been filed." *United States v. Clinton*, 574 F.2d 464, 465 (9th Cir.1978) (*per curiam*), *cert. denied*, 439 U.S. 830, 99 S.Ct. 106, 58 L.Ed.2d 124 (1978); *see* 18 U.S.C. § 3237. Hicks's place of residence is Arizona, and the collection point for his returns was the IRS center in Utah. Thus Hicks's offenses could be deemed to have occurred in either Arizona or Utah. Venue was proper in Arizona.

AFFIRMED.