91 F.3d 144
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Larry CANTRELL, Defendant-Appellant.
 No. 95-3852.
 United States Court of Appeals, Sixth Circuit.
 July 17, 1996.
 
 Before: KRUPANSKY, DAUGHTREY, and MOORE, Circuit Judges.
 MOORE, Circuit Judge.
 
 
 1
 Larry Cantrell challenges the validity of his guilty plea and contests certain aspects of his sentencing for conspiracy to distribute and possess with intent to distribute marijuana. This court cannot determine from the current record whether Cantrell's attorney provided him with the effective assistance of counsel required under the Sixth Amendment, but Cantrell's other assignments of error are meritless. We therefore affirm Cantrell's conviction and sentence but leave resolution of his Sixth Amendment claim to collateral proceedings.
 
 
 2
 * In a written plea agreement, Larry Cantrell agreed to plead guilty to conspiracy to distribute and possess with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1). Cantrell also agreed to waive his right to appeal and stipulated to certain sentencing recommendations. In return, the government agreed not to prosecute Cantrell for any related conduct and dismissed two other drug trafficking charges.
 
 
 3
 At the plea hearing, the district judge questioned Cantrell at length and in great detail regarding his understanding of the plea agreement. Cantrell acknowledged that he had discussed the agreement with his attorney, that he understood and was satisfied with its terms, that the agreement's sentencing recommendations were not binding on the court, and that he would not be able to withdraw his guilty plea if the judge decided not to follow the agreement's recommendations. The prosecutor then outlined the factual basis for the guilty plea. She described the arrest of several of Cantrell's fellow conspirators following the seizure of 661 kilograms of marijuana that were being transported from El Paso, Texas, to Ohio in a tractor-trailer. At the time of the arrest, one of the conspirators had Cantrell's and conspirator James R. Brannan's telephone numbers on a piece of paper in his pocket; the piece of paper also had "Lucasville," the truck's Ohio destination, printed on it. The police then mounted a sting operation in which Cantrell and Brannan were videotaped receiving a truckload of 900 kilograms of marijuana from El Paso. After his arrest, Cantrell confessed to the police that he had planned to transport the marijuana to Lucasville.
 
 
 4
 Cantrell admitted that the prosecutor's account was true. The judge asked him, "Is there anything about the agreement that I have not covered to your satisfaction or that you don't understand?" Cantrell replied, "No; I understand it." Plea Hr'g at 25. The judge then accepted Cantrell's guilty plea as freely and voluntarily made.
 
 
 5
 About two months later, the probation office issued its Presentence Investigation Report. Paragraph sixteen stated that "[i]n accordance with the plea agreement the defendant is being held accountable for 900 kilograms plus 661 kilograms as relevant conduct." It therefore recommended a base offense level of thirty-two, which the plea agreement had recommended as well. Cantrell filed an objection to the report, arguing that the plea agreement's use of the thirty-two figure was a misprint because the agreement also stipulated 900 kilograms, which would call for a base offense level of thirty under the sentencing guidelines. See United States Sentencing Commission, Guidelines Manual § 2D1.1(c)(5) (1994) [hereinafter U.S.S.G.]. At the sentencing hearing, Cantrell's attorney again raised this point, but then abandoned it, mischaracterizing the issue as a request for a downward departure, which the plea agreement proscribed. The judge later stated that "it is my understanding that the defendant does not contest the configuration of the relevant conduct essence of the guidelines, which raises it to a level 32 by reason of the inclusion of not only the 900 kilograms but the 661 kilograms as well." After summarizing other aspects of the sentencing determination, the judge asked Cantrell directly, "Does the defendant agree with that or not?" Cantrell responded, "Yes." Sentencing Hr'g at 8-9.
 
 
 6
 The parties agreed to a three-level reduction in the offense level for acceptance of responsibility and a two-level reduction for substantial assistance to the authorities. The judge therefore calculated a total offense level of twenty-seven. For Cantrell, whose criminal history level was one, this resulted in a sentence range of seventy to eighty-seven months. The judge sentenced Cantrell to seventy months. This appeal followed.
 
 II
 
 7
 Cantrell makes five separate arguments on appeal. First, he argues that his attorney's performance before the district court violated his Sixth Amendment right to effective assistance of counsel. Second, he argues that the plea agreement was internally inconsistent and that he was therefore unaware of the consequences of his own plea. Third, he argues that the government breached the plea agreement by arguing for a base offense level of thirty-two at the sentencing hearing. Fourth, he argues that the district court rejected the plea agreement and therefore erred in not then allowing Cantrell to withdraw his guilty plea. Finally, he argues that the court erred in finding that he was accountable at sentencing for more than 900 kilograms of marijuana.
 
 
 8
 The government points out that paragraph nineteen of the plea agreement stated that "[t]he defendant ... waives any right to raise and/or appeal and/or file any post-conviction writs of habeas corpus regarding the imposition of sentence ... and/or any matters pertaining to the prosecution including all motions, defenses, probable cause determinations, and objections to the Court's entry of judgment against defendant." This court has upheld knowing and voluntary plea agreements that included waivers of the right to appeal. E.g., United States v. Ashe, 47 F.3d 770, 775-76 (6th Cir.), cert. denied, 116 S.Ct. 166 (1995). Cantrell's first two assignments of error, however, involve whether his entry into the plea agreement was knowing and voluntary in the first place, and we therefore cannot deem them waived without deciding the very issue they present. Similarly, Cantrell's third and fourth arguments address whether the prosecution and court followed the terms of agreement, and we will not force Cantrell to adhere to his waiver of appeal if the other parties violated the agreement. Only Cantrell's final argument involves the kind of issue that Cantrell agreed not to appeal; it is therefore waived.
 
 
 9
 * Cantrell alleges that his attorney was ineffective by (1) assuring him that under the plea agreement he would be accountable at sentencing for only 900 kilograms of marijuana, which would call for a base offense level of thirty, and (2) failing to register an objection on the quantity issue during the sentencing hearing. Had he known that the 661 kilograms might count against him as well, Cantrell argues, he would not have pleaded guilty. See Hill v. Lockhart, 474 U.S. 52, 58-59 (1985) (holding that in order to prove ineffective assistance of counsel in guilty plea proceedings defendant must show that there is a reasonable probability that he or she would not have pleaded guilty absent attorney's deficient performance). We normally decline to review a claim of ineffective assistance of counsel when the appellant did not raise the claim below, leaving the issue for post-conviction proceedings under 28 U.S.C. § 2255. United States v. Wunder, 919 F.2d 34, 37 (6th Cir.1990). Therefore, because the district court did not have an opportunity to develop a record on the matters Cantrell raises, we shall not address them.
 
 B
 
 10
 Cantrell next argues that the plea agreement was internally inconsistent because paragraph five stipulated that "the amount of marihuana known by the Government and reasonably foreseeable by the defendant in the conspiracy as alleged in count 1 of the indictment is approximately 900 kilograms" but also recommended a base offense level of thirty-two, which would indicate that more than 1000 kilograms was the basis for the sentence. See U.S.S.G. § 2D1.1(c)(4) (1994). This alleged inconsistency, he contends, made him unaware of the consequences of his plea and thus rendered his plea invalid. See Mabry v. Johnson, 467 U.S. 504, 509 (1984). At the plea hearing, however, Cantrell acknowledged that he had reviewed with his attorney the base offense level figure in the plea agreement, and he had no questions about it. Unless Cantrell's attorney misinformed him regarding the significance of a base offense level of thirty-two, therefore, he cannot now complain about the court's use of that figure in determining his sentence. Cantrell's argument on this point is thus subsumed by the ineffective assistance of counsel issue and should be addressed in collateral proceedings.
 
 C
 
 11
 Cantrell also claims that the government breached the plea agreement by arguing for a base offense level of thirty-two at the sentencing hearing. It is true that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971). Here, however, the plea agreement specifically provided for a base offense level of thirty-two. Arguing that the plain language of an agreement be enforced cannot be called a breach thereof.
 
 D
 
 12
 Next, Cantrell cites United States v. Kemper, 908 F.2d 33 (6th Cir.1990), in support of the proposition that the district court had to allow Cantrell to withdraw his guilty plea after it decided not to follow the recommendations of the plea agreement. Kemper, however, involved a plea agreement under Federal Rule of Civil Procedure 11(e)(1)(C). Kemper, 908 F.2d at 36. Such agreements are essentially "take it or leave it" propositions for the district court, and if the court decides to "leave it," i.e., reject the bargain represented by the plea agreement, it must allow the defendant an opportunity to withdraw the guilty plea. Id. at 35; Fed.R.Crim.P. 11(e)(2), (4); U.S.S.G. § 6B1.3. The recommendations of Cantrell's plea agreement, on the other hand, were not binding on the district court, and so assuming arguendo that the court departed from the agreement's recommendations, it did not have to give Cantrell a chance to withdraw his plea. This was clear from the agreement's text and was orally confirmed by Cantrell at the plea proceeding. See Fed.R.Crim.P. 11(e)(1)(B); U.S.S.G. § 6B1.1(b).
 
 
 13
 For the foregoing reasons, we AFFIRM Cantrell's conviction and sentence.