RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0351p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  *v.*

No. 08-2362

BRENT NATHAN GROSS,
  *Defendant-Appellant.*

———————————

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 06-20494-001—Avern Cohn, District Judge.

Argued: April 28, 2010

Decided and Filed: November 10, 2010

Before: BATCHELDER, Chief Judge; MOORE and COOK, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Jerold Barringer, BARRINGER LAW OFFICE, Nokomis, Illinois, for
Appellant. Gregory Victor Davis, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Appellee. **ON BRIEF:** Jerold Barringer, BARRINGER LAW
OFFICE, Nokomis, Illinois, for Appellant. Gregory Victor Davis, Alan Hechtkopf,
UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

———————————

**OPINION**

———————————

KAREN NELSON MOORE, Circuit Judge. Defendant-Appellant Brent Nathan
Gross was convicted of three counts of attempting to evade or defeat tax, three counts
of making and subscribing to a false tax return, and one count of presenting a fictitious
financial instrument. The district court sentenced him to twenty-one months of
imprisonment. On appeal, Gross challenges his attempting-to-evade-tax convictions

1

along with his sentence, raising numerous arguments. For the reasons stated below, we **AFFIRM** the district court's judgment.

## I. BACKGROUND

On September 19, 2006, a grand jury indicted Gross on four counts of attempting to evade or defeat the payment of tax (26 U.S.C. § 7201) for the 2000-03 tax years. The attempted-tax-evasion charge relating to the 2000 tax year, however, was dismissed before trial. Gross was also charged with three counts of making and subscribing to a false tax return and one count of presenting a fictitious financial instrument, although none of these charges are at issue on appeal.

With respect to the attempt-to-evade-tax charges, the evidence presented at trial established the following undisputed facts. From 1997 through 1999, Gross worked as an electrician at Highgate Electric Inc. ("Highgate"), during which time Highgate regularly withheld funds from his paychecks for his federal income taxes. Gross's total federal income tax liability was $11,101 in 1997, $7,662 in 1998, and $9,503 in 1999. In March 2000, Gross submitted a W-4 form to Highgate on which he claimed to be exempt from withholding for the 2000 tax year. Gross submitted another such form in May 2002, though he used a 2001 W-4 form. As a result, Highgate deducted no taxes from Gross's paycheck during some of 2000, nor did it deduct any taxes for any of the tax years 2001, 2002, or 2003. Furthermore, Gross did not file federal income tax returns for 2001, 2002, and 2003, despite the fact that the income he received was well over the amount needed to trigger the filing requirement. At trial, an expert determined that Gross's federal income tax liability for those three years would have totaled $39,305.00. The expert calculated this amount, in part, by looking at the W-2 forms obtained from Highgate.

At the close of the Government's case, Gross moved for a judgment of acquittal, arguing, in part, that the filing of a false W-4 form did not amount to an affirmative act of evasion for purposes of § 7201 and that the Paperwork Reduction Act ("PRA") rendered Gross's failure to file a 1040 form "legally inadmissible." Dist. Ct. Doc. 68

(Trial Tr. Vol. IV (7/12/2007) at 3-7). The district court deferred ruling on the motion until after the jury returned a verdict. The jury subsequently convicted Gross on all counts. Shortly thereafter, Gross renewed his motion for a judgment of acquittal, and the district court denied the motion.

The probation department subsequently completed a Presentence Investigation Report ("PSR"), which determined that the tax loss with respect to Gross's attempt-to-evade-tax convictions amounted to $46,292.00. This amount included the $39,305.00 that Gross owed for the 2001-03 tax years, plus the $6,987.00 that Gross owed for the 2000 tax year. When combined with the tax loss stemming from the other offenses for which Gross was convicted, the total tax loss amounted to $144,355.00. Based on this amount, the PSR assigned Gross a Base Offense Level of 16, which ultimately became his Total Offense Level. Because Gross had no criminal history, his Criminal History Category was I, and his Guidelines range was twenty-one to twenty-seven months of imprisonment.

Gross submitted numerous objections to the PSR. Furthermore, prior to the sentencing hearing, Gross filed two motions to dismiss. One of the motions was again based upon the PRA and the other argued that the district court lacked subject-matter jurisdiction. At the sentencing hearing, the district court summarily rejected Gross's objections and motions, and sentenced Gross to twenty-one months of imprisonment—the low end of the Guidelines range. Gross appealed.

## II.  ANALYSIS

### A.  Attempt-To-Evade-Tax Convictions

#### 1.  Overview of Applicable Law

On appeal, Gross challenges only his three convictions pursuant to 26 U.S.C. § 7201 for attempt to evade or defeat tax.  Under § 7201,[1] the government must prove "willfulness, the existence of a tax deficiency, . . . and an affirmative act constituting an evasion or attempted evasion of the tax."  *Boulware v. United States*, 552 U.S. 421, 424 n.2 (2008) (internal quotation marks and alteration omitted).  This offense is distinct from the "willful failure to file" misdemeanor under § 7203,[2] which requires the Government to prove only that the defendant willfully failed to pay income tax or perform one of the other requirements specified under that section.  *Sansone v. United States*, 380 U.S. 343, 351 (1965).

#### 2.  Venue

Taking Gross's arguments in a logical order, we first address his claim that the district court lacked "jurisdiction . . . for purposes of venue," Appellant Br. at 34.  We are unclear as to what precisely Gross is arguing.  As best we understand it, Gross claims that "[s]ince October 2000, no internal revenue districts . . . existed which included the eastern District of Michigan or elsewhere."  *Id.* at 35.  As a result, Gross asserts that there was no place to which Gross could submit his tax returns, so that he never incurred a "tax deficiency" as required by § 7201.  As the Government correctly observes,

---

[1] Section 7201 reads as follows:  "Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 5 years, or both, together with the costs of prosecution."  26 U.S.C. § 7201.

[2] Section § 7203 reads as follows:  "Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return, keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $25,000 ($100,000 in the case of a corporation), or imprisoned not more than 1 year, or both, together with the costs of prosecution. . . ."  26 U.S.C. § 7203.

however, Gross never challenged venue prior to trial,[3] despite the fact that the alleged defect was readily apparent on the face of the indictment. As a result, Gross has waived any objections. *See United States v. Grenoble*, 413 F.3d 569, 573 (6th Cir. 2005).[4]

### 3.  W-2 forms

Gross also argues that, because the Internal Revenue Service ("IRS") obtained copies of Gross's W-2 forms from Highgate, Gross was not required to submit a tax return. It is unclear, however, which district court order he is challenging or whether he ever even raised this issue below. In any event, under any standard of review, Gross's argument is without merit.

We first note that Gross was not convicted of failing to file under § 7203, but rather was convicted of affirmatively attempting to evade payment of his taxes by filing false W-4 forms. Therefore, it is not entirely clear what Gross achieves by proving that he was not required to file a tax return. Even under § 7203, however, a W-2 form obtained from an employer is not a substitute for a tax return. Gross is correct that something short of a 1040 form may be adequate for a taxpayer to escape criminal liability. *See United States v. Patridge*, 507 F.3d 1092, 1095 (7th Cir. 2007), *cert. denied*, 552 U.S. 1280 (2008) ("[Section] 7203 requires a 'return' but does not define that word or require anyone to use Form 1040, or any 'official' form at all."); *In Re Hindenlang*, 164 F.3d 1029, 1033 (6th Cir.), *cert. denied*, 528 U.S. 810 (1999) (applying a four-part test in determining whether a document constitutes a tax return). Nonetheless, a "return" must still contain "sufficient information given from which the IRS can calculate tax liability based on the circumstances of the taxpayer's income year." *United States v. Grabinski*, 727 F.2d 681, 686 (8th Cir. 1984); *Hindenlang*, 164 F.3d at 1033; *see also United States v. Saussy*, 802 F.2d 849, 854 (6th Cir. 1986), *cert.*

---

[3]It is actually unclear as to whether Gross *ever* challenged venue in the district court. The closest he came to doing so was in a post-trial motion to dismiss in which he argued, in part, that 18 U.S.C. § 3231 violated Article III, Section 2, Clause 3 and the Tenth Amendment of the Constitution.

[4]Although we may consider a waived objection to venue if there is "good cause," *United States v. Auston*, 355 F. App'x 919, 923 (6th Cir. 2009), *cert. denied*, 130 S. Ct. 1558 (2010) (internal quotation marks omitted) (unpublished decision), Gross has not even attempted to argue that good cause exists.

*denied*, 480 U.S. 907 (1987) (approving jury instructions containing similar language). As the Government correctly observes, a W-2 form merely lists income derived from an employer and provides no information regarding other sources of income, possible deductions, or other information that might be relevant to the calculation of an individual's tax liability. *See Bachner v. Comm'r*, 81 F.3d 1274, 1280-81 (3d Cir. 1996). Furthermore, even if his employer's W-2 forms supplied sufficient information from which tax liability could be determined, Gross never actually submitted this form to the IRS. *See United States v. Stillhammer*, 706 F.2d 1072, 1075 (10th Cir. 1983) ("[T]he test is whether the defendants' returns themselves furnished the required information for the I.R.S. to make the computation and assessment, not whether the information was available elsewhere."). Therefore, we conclude that, under either § 7201 or § 7203, a taxpayer is not excused from filing a tax return simply because the IRS obtained that taxpayer's W-2 form from his employer. Indeed, to our knowledge, every court to have addressed this issue, including our own in an unpublished decision, has reached a similar conclusion. *See, e.g.*, *United States v. Boling*, No. 87-5051, 1988 WL 3477, at *1-2 (6th Cir. Jan. 19, 1988) (unpublished decision), *cert. denied*, 488 U.S. 893 (1988); *United States v. Bennett*, 341 F. App'x 776, 778 (3d Cir. 2009) (unpublished decision); *Stillhammer*, 706 F.2d at 1074-75.

### 4. Paperwork Reduction Act

Gross next argues that, because of the Paperwork Reduction Act ("PRA"), 44 U.S.C. § 3501 *et seq.*, he was not required to submit a tax return. Presumably, Gross is challenging either the district court's denial of his motion for a judgment of acquittal or its denial of his motion for dismissal. In either case, this court reviews the decision de novo. *United States v. Utesch*, 596 F.3d 302, 306 (6th Cir. 2010) (district court's legal conclusions in denying a motion to dismiss are reviewed de novo); *United States v. Burchard*, 580 F.3d 341, 352 (6th Cir. 2009) (denial of a motion for acquittal reviewed de novo with evidence considered in the light most favorable to the government).

The PRA was passed in an effort to reduce the burden that administrative agencies place upon the public by requesting information. *See Dole v. United Steelworkers of Am.*, 494 U.S. 26, 32 (1990). In particular, 44 U.S.C. § 3512 states that:

> (a)     Notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information that is subject to [the PRA] if--
>
> >    (1)     the collection of information does not display a valid control number assigned by the Director [of the Office of Management and Budget ("OMB")] in accordance with this subchapter; or
> >
> >    (2)     the agency fails to inform the person who is to respond to the collection of information that such person is not required to respond to the collection of information unless it displays a valid control number.
>
> (b)     The protection provided by this section may be raised in the form of a complete defense, bar, or otherwise at any time during the agency administrative process or judicial action applicable thereto.

44 U.S.C. § 3512. Gross argues that the IRS falsely certified that the 1040 forms contained all of the information required under the PRA, and as a result, the OMB number on the form is invalid so that Gross cannot be liable for failing to submit it.

Putting aside the question of whether the 1040 form's OMB number is valid, we conclude that Gross's argument still encounters two obstacles. First, we again note that Gross was not convicted of failing to file a 1040 form, but rather was convicted of affirmatively attempting to evade payment of his taxes. Therefore, even if 44 U.S.C. § 3512 excused Gross's failure to file a 1040 form, we do not think that this excuse would be relevant to his conviction. *See Patridge*, 507 F.3d at 1094 ("How [the PRA] could block a conviction for tax *evasion* is a mystery. . . . Evading one's taxes is illegal independent of the information one does or does not supply.").

Second, as the Government points out, in *United States v. Wunder*, 919 F.2d 34 (6th Cir. 1990), a panel of this court explained that "[t]he Paperwork Reduction Act . . . does not apply to the statutory requirement [that individuals file tax returns], but only to the [1040] forms themselves." *Wunder*, 919 F.2d at 38; *see also United States v.*

*Ouwenga*, 173 F. App'x 411, 417 (6th Cir. 2006) (unpublished decision). Although *Wunder*'s statement in this regard is arguably dicta, several other circuits have agreed. *See, e.g., Patridge*, 507 F.3d at 1094-95; *United States v. Neff*, 954 F.2d 698, 699-700 (11th Cir. 1992) (citing *Wunder*); *United States v. Kerwin*, 945 F.2d 92, 92 (5th Cir. 1991) (same); *United States v. Hicks*, 947 F.2d 1356, 1359 (9th Cir. 1991).[5]

We take this opportunity to reaffirm *Wunder* and hold that a defendant charged with either attempting to evade tax or failing to file a tax return cannot rely on 44 U.S.C. § 3512 as a defense. Title 26, § 6012(a), the provision which requires taxpayers to submit an income tax return, and § 7203, the provision which criminalizes a failure to do so, represent statutory mandates. *See also* 26 U.S.C. § 6011(a). The 1040 form itself is not what imposes the mandate to file a return and the form itself is not absolutely essential to satisfy this obligation.[6] *See supra* Section II.A; *Hindenlang*, 164 F.3d at 1033; *see also, e.g., Patridge*, 507 F.3d 1094-95; *Hicks*, 947 F.2d at 1359.[7] Furthermore, as the Government correctly observes, the legislative history surrounding the 1995 amendments to the PRA states that § 3512 was intended as a defense only during "a[n] agency administrative process or any subsequent judicial review" as opposed to criminal proceedings in district court. H.R. Conf. Rep. 104-99, at 36, *reprinted in* 1995 U.S.C.C.A.N. 239, 248 (emphasis added). Therefore, regardless of whether the 1040 form complies with the PRA, Gross's convictions for attempt to evade the payment of tax are still valid.

---

[5] As Gross points out, the Tenth Circuit has at times made statements suggesting that it does not agree with these circuits. *See, e.g., United States v. Collins,* 920 F.2d 619, 630-31 & n.12-13 (10th Cir. 1990), *cert. denied*, 500 U.S. 920 (1991) (suggesting that the PRA could be asserted as a defense in tax evasion prosecutions). Nonetheless, in *United States v. Dawes*, 951 F.2d 1189 (10th Cir. 1991), the Tenth Circuit did comment favorably upon the idea that the statutory obligation to file a tax return is unaffected by the PRA. *Dawes*, 951 F.2d at 1192 (explaining that the court "would be inclined to follow the general analysis of *Wunder* and *Hicks*" but choosing instead to base its opinion on other grounds).

[6] At times, Gross appears to argue that a valid return must always be on a 1040 form in order for a taxpayer to escape liability for failing to file a return. This position, of course, conflicts with his prior argument that a W-2 constitutes a return.

[7] In *Dole*, the Supreme Court, in passing, did state that the PRA applies to "tax forms." *Dole*, 494 U.S. at 33. Nothing in *Dole*, however, suggested that if a 1040 form did not comply with the PRA, taxpayers would not be required to file tax returns.

### 5. Good-faith Defense

Gross next argues that, even if his employer's W-2 forms and the PRA did not excuse his failure to file a 1040 form, the district court erred in not letting him present a defense based upon the theory that he had a good-faith belief that they did. Gross's brief, however, does not identify (nor have we found) any instance in which the district court prevented Gross from raising a good-faith defense. Indeed, the only time that the district court placed any restriction upon the evidence that Gross could present was when it cautioned him against presenting expert legal testimony, Doc. 67 (Trial Tr. Vol. I (7/09/2007) at 50-51), a limitation which would in no way impede a good-faith defense. At oral argument, Gross claimed that the district court essentially barred him from presenting a good-faith defense when it denied his motion to dismiss based upon the PRA. Gross did not file a motion to dismiss, however, until *after* the trial. Furthermore, the district court gave the jury an instruction on the good-faith defense. Therefore, as the government aptly notes, "the premise upon which defendant bases [his] argument" is entirely false. Appellee Br. at 20. Thus, Gross's argument regarding a good-faith defense is wholly without merit, if not outright frivolous.

### 6. The W-4 Forms and the Affirmative-Act Requirement

Gross next argues that the mere submission of false W-4 forms is not sufficient to satisfy § 7201's "affirmative act" requirement. In particular, he argues that a W-4 form could never amount to an affirmative act of evasion because a W-4 form is concerned only with the amount of money withheld by an employer. Under Gross's theory, prior to April 15 of each year, he was not obligated to pay any income taxes to the IRS for the previous year, and his decision not to permit regular withholdings did nothing more than deprive the IRS of an "interest-free loan." Appellant Br. at 33. Presumably, Gross is appealing the district court's denial of his motion for a judgment of acquittal, which we review de novo.

In *Spies v. United States*, 317 U.S. 492 (1943), the Supreme Court elaborated upon the types of actions that would qualify as "affirmative" acts of tax evasion. *Spies*,

317 U.S. at 499. In doing so, the Court cautioned that "Congress did not define or limit the methods by which a willful attempt to defeat and evade might be accomplished and perhaps did not define lest its effort to do so result in some unexpected limitation." *Id.* "By way of illustration," however, the Court offered some examples, which included:

> keeping a double set of books, making false entries or alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal.

*Id.*

The filing of false W-4 forms falls comfortably within the broad parameters established in *Spies*. Indeed, in *United States v. Spine*, 945 F.2d 143 (6th Cir. 1991), a panel of this circuit concluded that "the government proved specific *acts of evasion* on the part of [the defendant], such as *filing a false W-4 form with his employer* or depositing monies in a bank account in [another person's name]." *Spine*, 945 F.2d at 149 (emphasis added); *see also, e.g.*, *United States v. King*, 126 F.3d 987, 990 (7th Cir. 1997); *United States v. Doyle*, 956 F.2d 73, 75 (5th Cir. 1992). Gross has made no serious effort at distinguishing the panel's holding in *Spine*.[8] Therefore, as we are bound by prior published cases, *Spine* is controlling.

Additional reasons beyond *Spine* support our conclusion that the filing of a false W-4 form constitutes an affirmative act of evasion because "the likely effect" of such a form "would be to mislead or to conceal." *Spies*, 317 U.S. at 499. As the Government correctly points out, when a W-4 form bearing false information is on file, it is possible that the IRS might rely upon that information while investigating a taxpayer's failure to file a return, in which case the W-4 form would facilitate the taxpayer's attempts to evade payment of tax. *See United States v. Overton*, 617 F. Supp. 5, 7 (W.D. Mich. 1985). Similarly, filing false W-4 forms allowed Gross to ensure that the IRS would not

---

[8]Although Gross points out that *Spine* involved other affirmative acts in addition to filing a false W-4 form, such as concealing funds, we fail to see how this affects the *Spine* panel's conclusion that the filing of the false W-4 form was an affirmative act of evasion.

receive, through the withholding process, any of the taxes which it was owed.  *See id.*

Indeed, if Gross had not claimed that he was exempt from withholding, Highgate would

have withheld taxes from his paycheck, which would have thwarted Gross's attempts to

evade paying his taxes by not filing a return.  In other words, even if no taxes were due

when Gross completed the fraudulent W-4 forms, the W-4 forms still played an integral

part in his attempt to evade his taxes.[9]

Gross responds in a number of ways, none of which is convincing.  First, Gross

notes that he gave the W-4 forms to his employer, not the IRS.  Nonetheless, this does

not mean that the IRS might not obtain and review the form during the course of its

investigation, nor does it change the fact that the W-4 forms prevented Highgate from

withholding federal income tax from Gross's paycheck and transferring those funds to

the IRS.  Gross also argues that it is unlikely that the W-4 forms would have misled the

IRS because the IRS already knew how much Gross made in wages due to the W-2

forms.  Even if the IRS was likely eventually to uncover Gross's fraud, however, this

does not change the fact that the W-4 forms themselves could initially mislead the IRS.

Section § 7201 merely requires attempted evasion, and nothing within it requires that a

tax evader's overall scheme must be likely to succeed.  Finally, Gross argues that the W-

4 forms were not false with respect to a "material matter."  Appellant Reply Br. at 4.

Gross, however, cites no authority stating that materiality is an element of § 7201, and

instead appears to have confused that provision with § 7206.  In any event, under these

facts, his materiality argument is meritless.

\* \* \*

In sum, Gross committed an affirmative act of tax evasion when he submitted

false W-4 forms to Highgate.  Furthermore, neither the IRS's receipt of his employer's

W-2 forms nor the PRA excused Gross's failure to file a tax return.  Finally, Gross's

---

[9]In footnote 7 of his brief, Gross notes that he never submitted any W-4 form to Highgate in either 2001 or 2003, Appellant Br. at 31 n.7, and therefore he contends that he undertook no affirmative acts in those years.  Gross, however, has waived any argument with respect to this issue. *See El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation marks omitted)).

argument concerning his supposed good-faith defense is meritless.  Therefore, we affirm Gross's convictions under § 7201 for attempting to evade or defeat the payment of tax.

**B.  Sentencing**

Finally, Gross challenges his sentence, though we have had some difficulty deciphering his argument.  Gross claims that the district court erred by "enhanc[ing] the sentence with the amounts reported by Highgate . . . on Forms W-2 for 2000 though 2003, as these amounts were candidly and timely reported to the IRS."  Appellant Br. at 33.  As best we understand it, Gross contends that in determining the tax loss under the Guidelines, the district court should not have used the W-2 forms that the IRS obtained from Highgate.  We first note that neither the PSR nor the district court explicitly stated the means used to calculate the tax loss, though they presumably relied in part on the expert testimony at trial, which in turn relied upon information found on Gross's employer's W-2 forms.  In any case, even if the district court did look to the W-2 forms, it did not err in doing so.  In order to determine Gross's base offense level, the district court had to determine the "tax loss," which refers to "the loss that would have resulted had the offense been successfully completed."  U.S. Sentencing Guidelines Manual § 2T1.1(c)(1).  In order to calculate this amount, it was necessary to determine the amount of tax that Gross owed for the years in question, which in turn required determining his gross income.  Furthermore, the best and most reliable means of determining Gross's gross income from employment would be to look to his W-2 forms during those years.  Therefore, we fail to see how the district court erred in looking to Gross's employer's W-2 forms.  We suspect that Gross is simply trying again to argue that the IRS's receipt of his employer's W-2 forms somehow absolves him of any liability.  As explained in Section II.A.3, however, this argument is without merit.

Gross also appears to be arguing that under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Rita v. United States*, 551 U.S. 338 (2007), his sentence was improper because his Guidelines range was based on tax loss and the amount of the tax loss was determined by the court, not the jury.  Because the Guidelines range is only advisory, however, the district court was permitted to make these factual findings at sentencing.

*United States v. Osborne*, 545 F.3d 440, 445 (6th Cir. 2008).   Therefore, Gross's sentence did not violate *Apprendi*.

## III.  CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's judgment.